Gustave M. Minton and Bethesda Minton (Also Known as Bessie Minton), as Trustees, etc., of Leo Schlesinger, Deceased, and Others, Plaintiffs, *v.* D. A. Schulte, Inc., Defendant.*

Supreme Court, New York County, September, 1934.

*Riegelman, Hess & Hirsch [Lionel S. Popkin* and *John A. Sherman* of counsel], for the plaintiffs.

*Jerome Eisner [Henry I. Fillman* of counsel], for the defendant.

Lauer, J.   This is a motion for summary judgment. The action was instituted by the plaintiffs to recover the sum of $13,750, the installment of rent due on July 1, 1934, pursuant to the terms of a written lease made on or about June 24, 1922, between the defendant and one Leo Schlesinger, plaintiffs' predecessor in title. The premises affected by the lease are known as 637–643 Madison avenue, New York city, and are situated on the northeast corner of Madison avenue and Fifty-ninth street, borough of Manhattan, city of New York.   The answer interposed by the defendant sets

* See *contra, Euclid Holding Co.* v. *Schulte* (153 Misc. 455; revd., Id. 832).

up various defenses all based on the illegality of the lease. The defendant's answer sets forth that prior to the making of the lease the plaintiff's predecessor in title had failed to secure a certificate of occupancy required by the Building Code of the city of New York and the Greater New York Charter in the case of certain alterations which change the character of the building. These alterations are claimed to have occurred in the year 1919. In addition the answer sets up an equitable counterclaim of rescission whereby the defendants seeks to rescind and cancel the lease by reason of the aforesaid illegality. The defendant further by way of counterclaim seeks to recover for the difference between the value of the use and occupation of the premises and the amounts paid for rent under the lease, for real estate taxes and assessments, insurance and water charges paid by defendant under the lease, in the mistaken belief that all things had been done by the plaintiffs' predecessor in title to make lawful the use and occupation of the premises described in the lease. As a further counterclaim defendant asks the return of the sum of $25,000, the security deposited under the lease, with interest thereon.

The lease according to its terms terminates September 30, 1943. Defendant, opposing this motion, presents affidavits tending to establish that the alterations in the building which were made in the year 1919 effected a change in the character of the building. These facts are disputed by the plaintiff. While I have some doubt on this question, for the purpose of this motion I will assume that these questions of fact are resolved in favor of the defendant. Conceding that in the year 1919 alterations in the building were made which required a certificate of occupancy to be issued, does the fact that no such certificate has been issued make the lease herein entered into in the year 1922 illegal and void. The motion papers fail to disclose that the building department or any other department or official charged with the enforcement of the law has at any time found fault with the occupancy of the building herein involved. The plaintiffs admit that no certificate of occupancy has been obtained. However, it does not appear that any violation was placed against the property for failure to observe any of the laws claimed by the defendant to have been violated by the failure to obtain the certificate of occupancy. The fact is that the defendant appears to have been alone in raising the question as to the certificate of occupancy. An examination of the Greater New York Charter and the Building Code of the Code of Ordinances of the City of New York reveals the following:

Section 412 of the New York Charter, added by chapter 764 of the Laws of 1933 (formerly known as section 411-a, subdivision 2 thereof) reads as follows: " Buildings hereafter altered.

No building hereafter altered or converted from one class to another class shall be occupied or used in whole or in part for any purpose whatever, in case such building was vacant during the progress of the work, or in case such alteration did not necessitate the vacation of the building during the progress of the work the occupancy or use of any such building shall not continue more than thirty days after the completion of such alteration, unless a certificate of occupancy shall have been issued by the commissioner of buildings of the borough in which such building is situated."

Section 5, subdivision 2, of the Building Code of the city of New York reads as follows: " Buildings hereafter altered. No building hereafter altered, which was vacant during the progress of the work of alteration, shall be occupied or used, in whole or in part, for any purpose whatever, until a certificate of occupancy shall have been issued by the superintendent of buildings certifying that the work for which the permit was issued has been completed substantially in accordance with the approved plans and specifications and the provisions of this chapter applying to such an alteration; and when the occupancy or use of a building has continued during the work of alteration, the occupancy or use of the building shall not continue for more than 30 days after completion of the alteration unless such certificate shall have been issued."

Section 5, subdivision 4, of the Building Code of the city of New York reads as follows: " Change of occupancy. No change of occupancy or use shall be made in any building or part thereof, hereafter erected or altered, that is not consistent with the last issued certificate of occupancy for such building. In case of any now existing building, no change of occupancy that would bring it under some special provision of this chapter, shall be made, unless a certificate is issued by the superintendent of buildings, certifying that such building conforms to the provisions of this chapter with respect to buildings hereafter altered for the proposed new occupancy and use."

The Building Code contains the specific remedy for the enforcement of its provisions and for any violations. Section 650 provides for the issuance by the superintendent of notices of violations. Section 652 empowers the superintendent of buildings to commence action to " prevent the occupation or use of " buildings which have been " erected, constructed or altered, in violation of, or not in compliance with, any of the provisions " of the Building Code. Section 653, subdivision 2, empowers the corporation counsel at the request of the superintendent of buildings to apply to the Supreme Court for an order directing the superintendent to vacate any building or any part thereof and prohibiting the use or occupancy of such

building or any part thereof whenever any notice of violation shall not have been complied with. Section 654 imposes a penalty of from ten to fifty dollars upon any person who violates any provision of the Building Code. Nowhere in the Building Code or the Greater New York Charter is there any provision giving the tenant or lessee under a lease the right to withhold payment of rent or to rescind a lease because of the failure of the landlord to have filed a certificate of occupancy. Nowhere in the charter or Building Code is there anything which would indicate any legislative intent that the landlord's failure to file such a certificate of occupancy could be made the subject of collateral attack by the tenant. I find no force in defendant's contention that the landlord's failure to obtain the certificate of occupancy constituted the lease here involved an agreement to violate a statute.

It is elementary that a contract deliberately to violate a statute is against public policy and is null and void. Where, however, a statute is alleged to have been violated by a contract, the intent behind the statute should be looked into. (*Doyle* v. *Shuttleworth*, 41 Misc. 42.) It appears from the papers that the plaintiff in the instant case has never been requested by the superintendent of buildings to secure a certificate of occupancy. The defendant has occupied the premises since 1922 and has never until the institution of this action sought a rescission of the lease on the ground that the lease was illegal. The legality of the lease appears never to have been questioned. The defendant has sublet a part of the leased premises and has collected rents. The action of the defendant in now refusing to pay the rent and seeking to recover on the counterclaim the sums alleged in their answer seems to me to be unconscionable. I find no public policy which requires that the lease between the parties be declared void. As was said by the Court of Appeals in the case of *Cooper* v. *Gossett* (263 N. Y. 491), where the defendant sought to interpose a defense to the complaint based on the fact that the plaintiffs had failed to affix transfer stamps upon the sale of corporate stock in violation of the Tax Law and public policy, in dismissing the defense: " Balancing the several elements inherent in the case, we do not find public policy so exigent." So the law has in several other instances weighed public policy against the violation of a statute with the rights of the person violating the statute. It is well settled that the failure of a person doing business under an assumed name to file a certificate as required by the Penal Law will not preclude him from recovering upon an executed contract. (*Doyle* v. *Shuttleworth*, *supra*.) The court in that case (at p. 45) said: " The statute here relied upon is a highly penal one, and it is a rule peculiarly applicable to the construction of

such statutes that a thing within the letter of the statute is not within the statute unless this is the intention thereof." So, too, in the case of *Municipal Metallic Bed Mfg. Co.* v. *Dobbs* (253 N. Y. 313) the Court of Appeals held that a guaranty of performance of a lease was valid despite the fact that the lease itself could not be performed because in violation of certain statutes and ordinances.

Courts are interested not only in the enforcement of laws but likewise that parties should deal honestly with one another in connection with contracts into which they enter. (*Cooper* v. *Gossett, supra.*) The law should not be made the instrument whereby a vacillating party may unjustly avoid obligations under a contract after having reaped its benefits. In the case under consideration the defendant for twelve years has been content to be a tenant, to sublet the premises and to collect in turn rents from its tenants. The defendant now desires to void all that has occurred in these twelve years and not only seeks to avoid its obligation for rent for the present and future, but to recover moneys heretofore paid. Nothing in the statutes here under consideration gives the defendant a right to use the alleged violations as a defense in an action for rent. It would be highly inequitable and unjust to permit the defendant to prevail and I will not permit the court to be placed in the position of lending its aid to further such a situation. The motion for summary judgment is granted, with ten dollars costs.