■ Phyllis F. Ballin, Respondent, v. Edward H. Ballin, Appellant.— Action by a wife for a separation on the grounds of cruelty and failure to support, in which her husband counterclaims for a separation on the ground of abandonment. The appeal is from an order dated October 22, 1957 granting respondent's motion for temporary alimony and a counsel fee and referring the issue as to the amount thereof to an Official Referee for hearing and determination, and from an order dated December 11, 1957 determining the amounts of the alimony and the counsel fee. Order dated October 22, 1957 affirmed, with $10 costs and disbursements. No opinion. Order dated December 11, 1957 modified (1) by striking from the first ordering paragraph "Ninety-five ($95.00)" and by substituting therefor "Fifty ($50.00)", (2) by striking therefrom the fourth ordering paragraph and by substituting therefor "ORDERED that plaintiff's counsel fee be and it hereby is determined in the sum of $750.00, and that defendant pay the unpaid balance of said sum to the plaintiff at the office of her attorney, Erwin Weiss, Esq., 26 Court Street, Brooklyn, New York; and it is further", (3) by striking from the fifth ordering paragraph "$1500.00" and by substituting therefor "$750.00", and (4) by adding, after "plaintiff's counsel fee" in the fifth ordering paragraph, "if any". As so modified order affirmed, without costs. The unpaid balance of the counsel fee of $750 is to be paid within 10 days after entry of the order hereon. Under all the facts and circumstances the temporary alimony and counsel fee should be reduced as above indicated. Nolan, P. J., Wenzel, Beldock, Murphy and Ughetta, JJ., concur.

■ 56-70 58th Street Holding Corp., Respondent, v. Fedders-Quigan Corporation, Appellant.— In an action by a landlord to recover rent accrued under a lease, the tenant appeals from a judgment in favor of the landlord entered after trial before the court without a jury. Judgment reversed on the law and the facts, with costs, and complaint dismissed, with costs. Findings of fact insofar as they may be inconsistent herewith are reversed and new findings are made as indicated herein. The use of the premises authorized under the lease was inconsistent with the last-issued certificate of occupancy and therefore was unlawful (Administrative Code of City of New York, § C26–185.0). We need not determine whether that fact, standing alone, justified the tenant in rescinding the lease. (Cf. *Minton* v. *D. A. Schulte, Inc.,* 153 Misc. 195; *Mesfree Realty Corp.* v. *Huyler's,* 153 Misc. 667.) By a covenant in the lease as construed by the parties, the landlord undertook to obtain a certificate of occupancy covering the changed use for which the premises were demised. The time for the performance of that obligation was not limited in the lease but was properly fixed by written notice from the tenant to the landlord. (*Taylor* v. *Goelet,* 208 N. Y. 253.) Concededly, the certificate was not issued within the time so limited. In our opinion the covenants to obtain the certificate and to pay the rent were dependent. The landlord, having failed to perform that condition of the lease upon its part, may not recover the rent reserved. (Cf. *Rosenthal Paper Co.* v. *National Folding Box & Paper Co.,* 226 N. Y. 313; *De Angelis* v. *White-All Corp.,* 273 App. Div. 873.) Nolan, P. J., Ughetta, Hallinan and Kleinfeld, JJ., concur; Murphy, J., dissents and

votes to affirm, with the following memorandum: The application for the certificate of occupancy for the premises as a warehouse, which certificate the landlord was obligated to obtain under the lease, was approved by the Department of Housing and Buildings on June 8, 1954, as evidenced by Exhibit 3. The certificate was not issued at that time, however, because of the tenant's storage of combustible materials on the premises. Notice of this situation was not given to the landlord until it received a letter dated June 25, 1954 from the Department of Housing and Buildings. This notice was received only a few days before June 30, 1954, the date set by the tenant's notice for surrendering the premises unless the certificate of occupancy was forthcoming. The storage of combustibles was not the responsibility of the landlord, which finally succeeded in obtaining the certificate of occupancy on July 8, 1954. When the tenant attempted to surrender the keys to the premises on June 30, 1954 the landlord properly refused to accept them. The tenant's action in vacating the building was wholly unjustified in view of the fact that it was responsible for the storage of the combustibles, and in view of the fact that the landlord would have obtained the certificate of occupancy early in June but for the tenant's conduct. It should be noted that during the occupancy of the building by the tenant, the landlord made openings in the building so that trucks could pick up and take away goods, and had also put in cement driveways. Furthermore, the city authorities had placed no violations against the premises and had not harassed the tenant in any manner whatsoever.