FRANK B. HALL AND CO. OF NEW YORK, INC., Respondent-Appellant, v ORIENT OVERSEAS ASSOCIATES, Appellant-Respondent.

First Department, December 14, 1978

**APPEARANCES OF COUNSEL**

*A. David Benjamin* of counsel *(Eugene J. Morris, Mendes*

*Hershman, Eugene Zemp Du Bose, Jr.,* with him on the briefs; *Demov, Morris, Levin & Shein* of counsel to *Cox, Treanor & Shaughnessy,* attorneys), for appellant-respondent.

*Daniel T. Scannel* of counsel *(John P. Hale* and *Norman Fassler* with him on the briefs; *Hale & Russel,* attorneys), for respondent-appellant.

**OPINION OF THE COURT**

MURPHY, P. J.

In this action for declaratory judgment, the sole issue raised upon appeal relates to the third cause of action. After extensive negotiations, the parties entered into a lease, dated March 25, 1971, for floors two through seven in a new office building being built at 88 Pine Street in Manhattan. The plaintiff tenant agreed to pay the defendant landlord a base rent of $1,026,532.55 per year. The lease was to commence on January 1, 1972. However, as a result of delays in construction, the plaintiff did not move into the premises until April 1, 1972. By agreement, the plaintiff began to pay its base rent on March 15, 1972.

On December 23, 1971, the defendant had obtained a temporary certificate of occupancy (TCO) that permitted occupancy of the second floor by 128 persons. The lease and accompanying plans called for a cafeteria and office use for 192 persons. A permanent certificate of occupancy (PCO), issued on November 21, 1972, raised the permitted occupancy of the second floor to 240 persons. Subsequent to the issuance of the PCO, the plaintiff discovered that there was a variance between the number of persons (128) that could occupy the second floor under the TCO and the number of persons (192) who should have been able to occupy that space under the lease and plans. At that juncture, the plaintiff continued to pay its base rent but refused to pay the additional rent allegedly due under articles 12, 61 (b) and 61 (g) of the lease. To the extent here relevant, article 61 (b) provides: "61. (b) 'Real Estate Tax Factor' shall mean an amount determined by applying to the assessed valuation of the Land and Building for the First Tax Year the Real Estate Tax Rate in effect at the time of the issuance of a temporary or permanent Certificate of Occupancy for the Building of which the demised premises are a part and which Certificate permits Tenant to enter into occu-

pancy of the demised premises." Article 61 (g) contains a similar provision relating to the "Base Labor Rate".

It was the plaintiff's primary contention that the escalation clauses were never triggered because of the following language contained in article 3, as amplified by article 36: "The demised premises shall be deemed sufficiently completed *to* make the same ready for Tenant's occupancy when * * * (iv) a Certificate of Occupancy (temporary or final) has been issued by the Department of Buildings of the City of New York, permitting a Tenant's use of the demised premises *for the purposes for which the same has been leased."* (Emphasis added.) Specifically, the plaintiff maintained that the TCO and PCO did not permit the plaintiff to use the second floor for its intended use. Therefore, the escalation clauses never became operable.

The parties eventually entered into two agreements while this action was pending. The plaintiff agreed to make escalation payments with charges calculated on 1972 as the base year. The defendant agreed to refrain from pursuing any summary remedy. The escalation payments were made and accepted without prejudice to the claims of either party against the other in this action. The trial court refused to accept these stipulations into evidence. It did permit an amendment of the complaint to allow the plaintiff to claim that the escalation clauses were never triggered since the defendant never obtained the "Assembly" classification (Administrative Code of City of New York, § C26-307.1 *et seq.)* for the second floor.

The trial court agreed with the plaintiff's contention that the TCO or PCO must permit occupancy for the intended business use according to the lease. It reasoned that the plaintiff was deprived of full contractual use of the second floor until the PCO was issued permitting occupancy by more than 192 persons. The court further found that the cafeteria use was an "accessory use" (Administrative Code, § C26-201.0) that was permitted under a "Business" classification (Administrative Code, § C26-306.1). Therefore, the plaintiff's occupancy had been lawful under the PCO.

■ At the outset, two rulings of the trial court must be considered. First of all, as was noted above, the court refused to accept two stipulations into evidence. These stipulations should have been marked in evidence since they traced the parties' course of conduct before trial. The stipulations are

relevant for they indicate that the parties' actions, in paying and accepting the stipulated rent, were not prejudicial to their respective rights.

■ Secondly, the court permitted an amendment of the complaint at trial that the TCO and PCO did not allow occupancy for the intended purpose because an "Assembly" classification was never obtained. The court did not abuse its discretion in permitting this amendment (CPLR 3025, subd [b]) in light of the fact that there was no resultant prejudice to the defendant. The record indicates that the defendant did, in fact, prevail on this issue at trial.

■ As a general rule, a contract must be construed according to the expressed intent of the parties. Where the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used (10 NY Jur, Contracts, § 193). The subject lease is unambiguous and will be given effect according to its terms.

■ Article 3, as amplified by article 36, is only concerned with the date on which plaintiff was to commence the payment of rent. The experienced counsel, in drafting the lease, agreed that rent need not be paid until a TCO or PCO was issued permitting use of the demised premises for the purposes for which the same had been leased. If counsel had wished to trigger the escalation clauses (arts 12, 61 [b] and 61 [g]) with identical language, they could have easily done so. Instead, they chose to activate those clauses when a TCO or PCO was issued permitting the plaintiff tenant to enter into the occupancy of the demised premises. Undoubtedly, counsel wished to set a date certain for activating the escalation clauses. On appeal, we make no attempt to rewrite the lease. We merely set December 23, 1971, the date the TCO was issued, as the base date for escalation. It was on that date that the plaintiff was permitted to enter into occupancy.

Even if the trial court's interpretation of the lease were followed, the plaintiff's contentions are seen to be without merit. The plaintiff made four principal points at trial. First of all, it alleged that the defendant did not properly apprise the officials in the Department of Buildings (the "Department") as to the intended use of the second floor. Hence, the Department could not have issued a proper TCO or PCO. We need not speculate as to the adequacy of the data which the defendant provided to the Department, nor as to when that data was so furnished. Likewise, it is unnecessary to conjec-

ture as to how the officials in the Department digested or analyzed that information.

■ As a second point, the plaintiff maintained that the TCO and PCO were not proper for the cafeteria and office use on the second floor. The New York City Charter (§ 645, subd [b], par [3], cl e) provides in relevant part: "e. every certificate of occupancy shall, unless and until set aside, vacated or modified by the board of standards and appeals or a court of competent jurisdiction, be and remain binding and conclusive upon all agencies and officers of the city, and shall be binding and conclusive upon the department of labor of the state of New York, as to all matters therein set forth, and no order, direction or requirement affecting or at variance with any matter set forth in any certificate of occupancy shall be made or issued by any agency or officer of the city, or by the department of labor of the state of New York, or any commission, board, officer or member thereof, unless and until the certificate is set aside, vacated or modified by the board of standards and appeals or a court of competent jurisdiction upon the application of the agency, department, commission, or officer or member thereof, seeking to make or issue such order, direction or requirement". The plaintiff has made no administrative attempt to challenge the TCO and PCO under discussion. In particular, no attempt has been made to demonstrate that the second floor should have an "Assembly" rather than a "Business" classification. A collateral attack on the TCO and PCO will not be permitted in this proceeding. (*Robitzek Investing Co. v Colonial Beacon Oil Co.,* 265 App Div 749, 754.)

■ In its third point, the plaintiff alleged that it had unlawfully occupied the premises under the TCO and PCO. Again, it should be stressed that plaintiff was never served with any notice of violation (Administrative Code, § 643a-1.0) by the Department. This court will not presume that the plaintiff violated either the TCO or PCO by its occupancy, or that the Department has failed to do its duty in discovering any violations. (Cf. *56-70 58th St. Corp. v Fedders-Quigan Corp.,* 5 NY2d 557, 565.) Furthermore, no evidence was presented nor did the trial court find that the plaintiff actually occupied the second floor with more than 128 persons when the TCO was operable.

■ Finally, the plaintiff asserted that the TCO and PCO were inconsistent with and/or violated the specifications delin-

eated in the lease and plans. Since the plaintiff has fully enjoyed the use of the premises as contemplated by the lease, it cannot meritoriously raise this fourth argument *(Robitzek Investing Co. v Colonial Beacon Oil Co., supra,* 754; cf. *Minton v D. A. Schulte, Inc.,* 153 Misc 195, 198).

Accordingly, the judgment of the Supreme Court, New York County (SPECTOR, J.), entered February 15, 1978, insofar as appealed from which, *inter alia,* declared November 21, 1972 to be the base date, should be modified, on the law and on the facts, by declaring December 23, 1971 to be the base date, and, as modified, it should otherwise be affirmed, with costs to defendant.

SILVERMAN, FEIN, MARKEWICH and SANDLER, JJ., concur.

Judgment, Supreme Court, New York County, entered on February 15, 1978, unanimously modified, on the law and the facts, by declaring December 23, 1971 to be the base date, and, as modified, affirmed. Defendant-appellant-respondent shall recover of plaintiff-respondent-appellant $75 costs and disbursements of this appeal.