■ SHEILA MANDEL, Respondent, v 201 WEST 16 ASSOCIATES, Respondent, and FRANCIS GREENBURGER et al., Appellants.— Order, Supreme Court, New York County (Arthur E. Blyn, J.), entered January 15, 1986, which denied plaintiff's motion and defendants' cross motion for summary judgment, unanimously reversed to the extent appealed from, on the law, without costs or disbursements, the cross motion granted and the complaint dismissed as against appellants.

Plaintiff is a tenant of a rent-stabilized penthouse apartment, No. 20A, at 201 West 16th Street, New York City, under a 20-year lease entered into October 1, 1968. The lease was entered into with the prior owner, Broadcham Equities,

Inc., which had purchased the building from plaintiff's deceased husband's parents. Plaintiff's long-term lease, which was one of the conditions of the sale, provided for an initial five-year term, with options for a subsequent five-year renewal and a second renewal for 10 years, which was to run to April 30, 1989. Thereafter, plaintiff was to receive renewals afforded under rent stabilization. Paragraph 34 of the lease, at issue here, provides: "In the event a plan is promulgated to cooperate the apartments in the building of which the demised premises are a part, tenant agrees to purchase the apartment herein demised at the price promulgated (not exceeding $3500.00 per room above mortgages in force at time of such promulgation) or tenant has option to cancel this lease or any renewal or extension thereof on six months written notice to landlord and vacate the demised premises at the end of 6 months or on September 30, 1970, whichever date is later. Said option is to be exercised within the time tenant has a right to purchase the apartment, pursuant to the provisions of the plan, as promulgated or any notice given pursuant to said plan, or within 60 days after written notice by landlord to tenant, whichever date is earlier."

This action was brought for specific performance, plaintiff contending that the above provision in the lease granted her an option to purchase the cooperative apartment for the sum of $17,500 ($3,500 per room), in lieu of the $149,450 insider's price set forth in the offering plan. Defendants rejected plaintiff's offer, claiming that the lease obligated the tenant to purchase the apartment if the offering price was not more than $3,500 per room or, in lieu thereof, to cancel the lease, but if the cooperative plan provided for a price in excess of $3,500 per room, plaintiff was entitled to continue in occupancy as a rent-stabilized tenant.

On review of the record, we find no factual issue which must await trial. The interpretation of an agreement is a question of law for the court and the function of the court is to accord the language used by the parties a "fair and reasonable meaning" (*Heller v Pope,* 250 NY 132, 135; *see also, Sutton v East Riv. Sav. Bank,* 55 NY2d 550, 555). Where the intention of the parties is clearly expressed and there is no ambiguity, effect must be given to the parties' intent in accordance with the language used in the agreement. *(See, Slatt v Slatt,* 64 NY2d 966; *Hall & Co. v Orient Overseas Assoc.,* 65 AD2d 424, *affd* 48 NY2d 958.) The court may not fashion a new contract under the guise of contract construction *(Slatt v Slatt, supra; Morlee Sales Corp. v Manufacturers*

*Trust Co.,* 9 NY2d 16). In our view, there is no ambiguity or uncertainty as to the disputed clause at issue here. Paragraph 34 does not afford plaintiff an option to purchase on conversion to cooperative status for the sum of $17,500. This would result in an unwarranted windfall to the tenant, beyond the contemplation of the parties when the lease was entered into.

It is undisputed that the purpose of the lease was to give plaintiff security in terms of her residence over a lengthy period of time. Under the clear terms of paragraph 34, in the event the building was converted to cooperative ownership, plaintiff was obligated to purchase the apartment if the offering price was not more than $3,500 per room or, in the alternative, to cancel the lease or any renewal or extension, on six months' written notice to the landlord. However, if the price exceeded $3,500 per room, she could remain in occupancy, under the renewal provisions in paragraph 29, as a rent-stabilized tenant. Of course, she had the right to purchase at the insider's price set forth in the offering plan, which, for this apartment, would be $149,450. This was confirmed by the deposition of plaintiff's former attorney, who prepared the lease, and who testified that the prime purpose of the lease was to ensure plaintiff a place to live over at least a 20-year period. The provision relating to $3,500 per room in terms of any cooperative conversion was to protect the landlord, not to result in a windfall to the tenant. The figure was selected by the attorney "out of the air", and was, in his opinion, the maximum which could be realized "in those days", should the building be converted to cooperative ownership. Concur—Murphy, P. J., Kupferman, Ross and Kassal, JJ.