OPINION OF THE COURT
David Goldstein, J.
These actions were submitted at Small Claims Part for disposition upon an agreed statement of facts pursuant to CPLR 3222. Consistent with the informality of the procedure in small claims, while the record does not include a written statement of facts, it is conceded that the facts are as recited in the motion to consolidate, the parties orally agreeing to submit the matter for determination on the merits as to the novel legal issue raised herein.
The issue in the actions is one of apparent first impression in connection with the purchase of condominium units to be constructed for residential occupancy, where, subsequent to the initial escrow deposit, a bond or contract of indemnity is posted with the vendee. The question posed involves the construction to be accorded Lien Law § 71-a, insofar as relates to the purchaser’s entitlement to interest on the down payment during the period after the bond was posted and until the date the initial advance secured thereby was returned, the contracts having been canceled and the deposits returned. As far as appears, there are no reported decisions on the issue, interpreting Lien Law § 71-a.
On February 13, 1986, each of the plaintiffs entered into an agreement to purchase a new condominium unit to be constructed by Colonial Townhouses in an area south of the Long Island Expressway, in Douglaston, Queens. Under the purchase agreement, a 10% deposit was required, pursuant to which each plaintiff placed $12,500 in an interest-bearing escrow account maintained by defendant’s attorney. On March 5, 1986, defendant posted separate bonds to secure each down payment, in accordance with the procedure authorized by Lien Law § 71-a (3) (b) and (c), and pursuant to paragraph 12 of the purchase agreement, the latter providing in part as follows: "The seller will hold all monies received directly or through its agents or employees hereunder in trust until the closing of title to a home or Sponsor may use said funds prior to closing if a bond or letter of credit is posted to insure a return of such *1004 payment in the event a Purchaser is entitled to a refund of such monies pursuant to the terms of this purchase agreement or the Offering Plan.”
As a result, after the bond was posted, the down payments were released to defendant and used for its general purposes. Subsequently, in the spring of 1987, a section of the retaining wall of the townhouse development collapsed, resulting in substantial damage to the units under construction. While it does not appear whether defendant abandoned the project, it is conceded that the delay in conveying title permitted each plaintiff to exercise an option to cancel the agreement.
Thus, under the terms of the contract, plaintiffs requested, inter alia, a full return of the initial advance and interest thereon. While defendant had no objection to refunding the deposits, plus interest to the date the bond was posted, it contends that the purchasers are not entitled to interest subsequent to issuance and filing of the security bond. According to defendant, the bond filed under Lien Law § 71-a (3) (b) and (c) secures only the down payment, not interest to be earned thereon. Defendant argues that this results from the fact that, while subdivision (3) (a) of section 71-a does require the "initial advance” to be deposited in "an interest bearing escrow account”, subdivision (3) (b) and (c), allowing a bond in lieu of such escrow deposit, does not mention interest and contains no direction that the bond guarantee interest which would have been earned.
In contrast to the strict construction of the statute urged herein by defendant, plaintiffs, in pragmatic fashion, point to the reality of the situation, by which defendant was permitted to use the initial down payment for its own purposes during the period after the bond was filed. While plaintiffs concede that the statute does not expressly address the issue, they argue that they are entitled to interest during the period since defendant had the use of their money.
As noted, Lien Law § 71-a (3) (a) directs that the initial advance under a contract for the construction of residential condominium units be deposited "in an interest bearing escrow account” and that "[s]uch deposit, together with the interest accumulated thereon, shall remain the property of the vendee”. The critical provisions at issue in these cases are subdivision (3) (b) and (c) of section 71-a, which provide as follows:
"(b) In lieu of making the deposit of such moneys in an *1005 escrow account as provided in paragraph (a) of this subdivision, the recipient may post with the vendee a bond or contract of indemnity, issued by a surety company licensed to execute such an instrument in this state, guaranteeing the return of the moneys which otherwise would be required to be deposited in such escrow account, in which case the recipient shall not be required to deposit such money in an escrow account. Said bond or contract of indemnity shall be delivered to the vendee within ten business days after receipt of the initial advance.
"(c) At any time after making the deposit of such moneys in the escrow account, the recipient may post with the vendee a bond or contract of indemnity issued by a surety company licensed to execute such an instrument in this state guaranteeing the return of such monies, in which case the recipient shall not be required to maintain the deposit of such monies in such account.” (Emphasis added.)
Notwithstanding the parties’ apparent agreement that the statute, strictly construed, does not specifically deal with interest during the period after the bond was filed, in this court’s view, the matter of entitlement to interest has been addressed by the Legislature, albeit the legislative enactment is hardly a model of clarity. Close examination of the statute reflects the use, in the alternative, in subdivision (3) (b) and (c), of the terms "money” and "moneys”, which, in my view, must refer and relate to the preceding direction in subdivision (3) (a), in terms of the "initial advance” and "[s]uch deposit, together with the interest accumulated thereon”. Plainly in the absence of any indication that this was a legislative oversight, the drafters must have intended that the singular and plural terms in subdivision (3) (b) and (c) relate to two different and distinct matters.
This interpretation gives full effect to each of the terms and phrases in the statute, consistent with usual rules of statutory construction (McKinney’s Cons Laws of NY, Book 1, Statutes § 231), under which an interpretation is favored which harmonizes the various legislative provisions with each other, ascribes to words and phrases their plain meaning and gives effect to all statutory provisions and language (People v Dethloff, 283 NY 309, 315; Matter of Social Investigator Eligibles Assn. v Taylor, 268 NY 233, 237; Matter of Anderson v Board of Educ., 46 AD2d 360, 364-365, affd 38 NY2d 897; People ex rel. Powott Corp. v Woodworth, 260 App Div 168, 172). Similarly, McKinney’s Consolidated Laws of NY, Book 1, Statutes § 232 directs that words be construed in accordance with their *1006 ordinary and usual meaning, conceptually akin to the prevailing principle which generally governs the construction of contracts (see, Slatt v Slatt, 64 NY2d 966, affg 102 AD2d 475, 476-477; Sutton v East Riv. Sav. Bank, 55 NY2d 550, 555; Mandel v 201 W. 16 Assocs., 121 AD2d 910, 911).
Applying these general principles of construction, in my view, the only rational interpretation of the legislation, and one which gives full effect to all of the language used, requires that the bond posted secure not only the initial advance but also interest to be earned thereon, a reasonable result bearing in mind that the seller retains the full use and enjoyment of the vendee’s down payment during the period prior to closing. Thus, at the recipient’s option, in lieu of the escrow deposit, a bond or contract of indemnity may be posted, "guaranteeing the return of the moneys” (i.e., the initial advance and accumulated interest thereon, as provided in Lien Law § 71-a [3] [a]), "in which case the recipient shall not be required to deposit such money in an escrow account” (i.e., the initial advance referred to in Lien Law § 71-a [3] [a]). (Lien Law § 71-a [3] [b]; emphasis added.) Likewise, subdivision (3) (c) permits the posting of such a bond at any subsequent time, "guaranteeing the return of such moneys, in which case the recipient shall not be required to maintain the deposit of such moneys in such account.” Plainly, this refers to the initial advance and accumulated interest, the plural reference in the preceding subdivision (3) (a).
This construction accords full effect to the underlying purpose of interest, which is designed "to compensate for the loss of use of money” (Siegel, NY Prac § 411). CPLR 5001 (a) directs an award of interest for "a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property”. It has been generally held that interest on a claim prior to verdict, in the case of injury to or loss or destruction of property, is awarded to fully compensate the aggrieved party for the loss sustained (Matter of Rochester Carting Co. v Levitt, 36 NY2d 264, 268), and is awarded as a matter of right, notwithstanding the failure to demand interest in the complaint or to request the jury to declare an award of interest (see, Flamm v Noble, 296 NY 262, 268; see also, Delulio v 320-57 Corp., 99 AD2d 253). In this general connection, it has been observed: "A function of interest is to make whole the party aggrieved. Interest is the price or rate paid by a borrower for the use of what he borrows, payment for the use of money or *1007 for the forbearance in demanding payment of a debt * * * Interest should accordingly be awarded * * * in order to compensate and make plaintiff whole for defendant’s use of the money during that period. In this sense interest is not a penalty but merely payment for the use of money.” (Malkin v Wright, 64 AD2d 569, 571, Fein, J., concurring.)
In our cases, it is undisputed that defendant had the sole use and enjoyment of each plaintiffs $12,500 down payment, from the date the purchase agreements were entered into on February 13, 1986, when the escrow deposits were created, until cancellation, upon defendant’s admitted failure to perform. In that light, interest must be awarded, consistent with its general purposes, to make the vendees whole for defendant’s use of their money during that period, including after March 5, 1986, when the bond authorized by Lien Law § 71-a (3) (b) and (c) was posted. Neither the law nor logic warrants a contrary determination, a result consistent with the remedial, salutory purposes to be accomplished by the statute. This is especially so, considering that the fund created by the statute is in the nature of a trust fund and is expressly denominated as such (Lien Law § 71-a [2]).
Thus, each plaintiff would be entitled to recover interest at the appropriate legal rate for the entire period, including the time after the bond had been posted, during which defendant retained the use and enjoyment of the down payment and any interest earned thereon.
However, on the record adduced in these cases, it appears that each plaintiff had executed a general release upon the return of the deposit and accumulated interest to the date the bond was posted. Plaintiffs Ronald and Vincent Paradiso signed general releases on July 27, 1987 and plaintiff Robert Carlsen, an attorney, executed an identical release on August 5, 1987. While it appears that, now, each plaintiff appears pro se, at the time of the release, Carlsen formally represented the other plaintiffs in addition to himself. Each general release, in identical and standard fashion, broadly releases defendant "from all actions, causes of action, suits, debts, dues, sums of money * * * controversies * * * claims, and demands whatsoever, in law * * * or equity, which against the releasee, the releasor, releasor’s heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever” and specifically relates to the subject purchase agreements for these condominium units. The broad and *1008 general releases were executed notwithstanding that, shortly prior thereto, on June 29, 1987, Carlsen, on his own behalf and as counsel to the other plaintiffs, wrote to demand a full return of all sums due, with interest thereon.
Under the circumstances, when the general releases were prepared, plaintiffs were well aware that a portion of their claim to interest was in dispute and was not expressly excluded from the terms of the release. Under clear legal principles, they were obligated to read the release before executing the same and were bound by its contents. As has been often held, the law does not relieve a party from the consequences of a document merely because he has failed to read that which he has executed (Pimpinello v Swift & Co., 253 NY 159; Humble Oil & Ref. Co. v Jaybert Esso Serv. Sta., 30 AD2d 952). Where, as here, the language of a release is clear, full effect must be given to the intent of the parties as reflected by the language used by them and the terms of the release enforced, subject, of course, to avoidance only upon a sufficient showing of fraud, duress, illegality or mutual mistake, none of which is claimed here. (See, Mar Co. Export v Banco De Santander, 99 AD2d 403; Walsh v Walsh, 91 AD2d 1198; Delaney v County of Westchester, 90 AD2d 819, appeal dismissed 59 NY2d 763; Thives v Holmes Ambulance Serv. Corp., 78 AD2d 651; Golding v Weissman, 35 AD2d 941, appeal dismissed 29 NY2d 913; Bonomi v Figur, 283 App Div 736, affg 123 NYS2d 50.)
The legal principle is firmly established and well recognized in this State. In Matter of Schaefer (18 NY2d 314, 317), the Court of Appeals observed: "Where the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed (Single v. Whitmore, 307 N. Y. 575, 583; see, also, Lucio v. Curran, 2 N Y 2d 157, 161). If the bank intended to reserve any further claims against the estate, it should have added words of reservation or, in the alternative, deleted the words 'in full satisfaction’.”
Similarly, in Lucio v Curran (supra, at 161-162), where the general release had the same broad and all-inclusive language as that in these cases, the court held: "Such words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies * * * even though no such litigation had then been instigated * * * and notwithstanding *1009 plaintiffs intent to commence a further suit for redress of his prior expulsion” (emphasis in original).
Mendelson Bros. Factors v Sachs (253 App Div 270, affd 279 NY 604) is also instructive, where the court observed (supra, at 273-274): "Whether plaintiffs claim was specifically known or not, it was embraced by the releases and the agreement of settlement. In the absence of fraud or bad faith the corporation had the right to forego recovery for unknown as well as known causes of action. (Kirchner v N.H.S.M. Co., 135 N. Y. 182, 188.)”
Similarly, in these cases, the releases are standard general releases, with broad, all-inclusive language, which must be given effect. The language used could not be clearer and plainly reflects the intent of the parties to forego and release all claims, known or unknown when the releases were executed and delivered. At the time, the parties were represented by capable counsel and, as far as appears, the documents were prepared and signed as part of an arm’s length transaction, with no claim or proof of fraud, duress, mutual mistake or overreaching of any kind, required in order to invalidate the terms of the release. Thus, plaintiffs are bound by the terms of the settlement as reflected in the release and precluded from now proceeding in these actions to recover what they knew or should have known was covered by the terms of the release.
Accordingly, notwithstanding this court’s interpretation of the statute, requiring a builder, who posts a bond pursuant to Lien Law § 71-a (3) (b) and (c), to include accumulated interest to be earned on the initial advance to be deposited under the purchase agreement, under the facts of this case, the execution of general releases, which did not preserve plaintiffs’ right to pursue a further remedy to recover accrued interest, operates as a bar to the relief herein sought. Therefore, upon the parties’ submission on an agreed statement of facts pursuant to CPLR 3222, it is concluded that each plaintiff is not entitled to recover interest and, accordingly, the claims are denied and the complaints dismissed.