John D. Bennett, S.
The decision of November 29,1971 concluded that the alleged liability of the First National City Bank could not be determined without a hearing. The parties were directed to complete all preliminary disclosure proceedings prior to filing a note of issue and statement of readiness under rule 1830.21 of this court. The parties instead entered into a stipulation of facts, submitted additional papers and now ask the court to make a determination without a hearing.
*789 The decedent’s last will and testament was executed on July 31,1942 and the decedent died on October 19,1944. By the terms of his will, he created certain trusts and nominated fiduciaries and successor fiduciaries. Under article seventh, the decedent designated his son and secretary as trustees, both of whom qualified and acted as trustees. The decedent’s son has since died and his secretary, because of advanced age, resigned. Article seventh provides that the vacancies are to be filled by City Bank Farmers Trust Company or its successor, “its compensation to be as agreed with me under date of August 18, 1924.” In the event City Bank Farmers Trust Company, or its successor, shall fail or cease to act, a successor is to be appointed by a designation in writing signed by a majority of the adult beneficiaries. The testator provided that in lieu of statutory commissions, his secretary was to receive a stipulated amount, which was less than the statutory commissions provided by law. The decedent’s secretary was to stipulate to accept said allowance prior to qualifying.
When the vacancies occurred, the beneficiaries requested First National City Bank, the successor to “ City Bank Farmers Trust Company ”, to qualify and act as trustee and to agree to accept as compensation for its services an amount the beneficiaries claimed the bank agreed to accept pursuant to letters of agreement between the decedent and the bank. The bank refused to qualify and the beneficiaries named another corporate fiduciary as successor trustee, which trust company is to be paid statutory commissions. Two individual trustees were also designated by the beneficiaries and they are serving without compensation. The petitioners contend that First National City Bank is liable to the estate for its breach of an alleged agreement to serve as trustee and that they have been damaged in an amount equal to the difference between the commissions that must be paid to the trust company and the compensation the respondent bank allegedly agreed to accept. They agree that they cannot force the bank to qualify but contend that it should be held liable for failing to do so.
The above facts were part of the record prior to the decision of November 29, 1971. Exhibits have now been submitted indicating that the decedent, a director of one of the respondent bank’s predecessors, had extensive correspondence and discussions relative to amounts that would be charged for handling trusts and wills of the decedent and his spouse. One of the memos of the respondent bank indicates that other institutions in the city were willing to cut their rates and that there was a *790 possibility of losing some of the decedent’s business if they did not agree to reduced commissions.
There are two letters which were annexed to the petition in this proceeding. One is on the letterhead of the National City Bank of New York, Trust Department dated August 18, 1924 and signed by a vice-president and trust officer, The letter states that the bank received a call from the testator’s attorney and discussed the question of a letter sent by the bank to the decedent dated June 10, 1924 which dealt with the executor’s and trustee’s commissions. The letter states that the bank intends to agree to serve as executor or trustee for one half of the statutory commissions. The bank went to to state that in case it was appointed executor or coexecutor or substitute executor under the decedent’s will or under the will of the decedent’s wife, the bank would accept as compensation the amount of 1% for paying and receiving principal and 1% on income and in the event it were appointed trustee or cotrustee, whether originally named or appointed trustee or cotrustee by substitution, or as substituted trustee under either the decedent’s will or his wife’s will, it would accept one half of 1% for receiving the principal and one half of 1% for disbursing principal at the termination of the trust, plus an annual fee of 1% on income.
The letter further provides that “ in case we are appointed and shall act in the capacity both of executor or co-executor and trustee or co-trustee or substituted trustee, we are willing that your estate, in lieu of the compensation above provided, shall pay a one per cent flat principal fee covering our duties as executor and for .receiving principal as trustee, in which event we shall be entitled to make an additional charge of one per cent for paying out the principal on the termination of the trust or trusts created under the Will.” The letter stated that if the terms of the decedent’s will are such that the bank would not be entitled to separate commissions as executor and trustee then and in such event no additional fee as trustee would be charged for receiving principal of the estate.
The other letter is dated November 14, 1935 on the letterhead of City Bank Farmers Trust Company and signed by a vice-president of said bank. The letter reads as follows: “ I acknowledge receipt of your letter of November 11, in regard to the commissions which we would charge for acting as Executor and Trustee under your Will. Although the statutory rates in New York at the present time are considerably higher than those quoted in our letter of August 18, 1924 to you, we confirm that if we are designated as Executor under your Will, our *791 charges for such services will be the same as those set forth in our letter of August 18, 1924.” (Emphasis supplied.)
As the court indicated in its decision of November 29, 1971, the problem presented is one of first impression as there are no cases directly in point in the State of New York. Our New York cases deal with fiduciaries who qualify and then attempt to renege on commission agreements entered into during the lifetime of the testator, or provisions under the will which condition the appointment of a fiduciary on his willingness to accept reduced commissions (Matter of Schinasi, 3 N Y 2d 22; Matter of Hayden, 172 Misc. 669; Matter of Rosenthal, 185 Misc. 168; 56 N. Y. S. 2d 904).
It is well settled that a person named as an executor cannot be compelled to act and the office may be accepted or refused in his discretion (33 C. J. S., Executors and Administrators, § 29). As stated in Beekman v. Bonsor (23 N. Y. 298, 305) “ no man can be compelled, against his own will, to execute the testamentary wishes of another. ’ ’ Moreover this is so even if, in the lifetime of the testator, Tie had agreed to accept the office (2 Woerner, American Law of Administration [3d ed.], p. 790).
Relating this significant factor, that of complete freedom to serve or not to serve, to the law of contracts, it is clear that any alleged agreement or promise was purely illusory and the 1 ‘ agreement ’ ’, lacking mutuality of obligation, is unenforceable as a contract (1 Williston, Contracts [3d ed.], § 105A). The requirement of mutuality of obligation is another way of saying there must be a valid consideration to support the contract. Here the promise of the respondent bank to serve imposed no contractual legal duty and is therefore insufficient consideration (Balsam Farm v. Evergreen Dairies, 6 A D 2d 720; 1 Page, Contracts, p. 452).
The law of contracts makes a clear distinction between serious offers to presently contract and preliminary negotiations which are a mere expression of an intention or general willingness to do something in the future. “ Since an offer must be a promise, a mere expression of intention or general willingness to do something on the happening of a particular event * * * does not amount to an offer.” (1 Williston, Contracts [3d ed.] § 26). Again the same author at section 27 states: “ Frequently negotiations for a contract are begun between parties by general expressions of willingness to enter into a bargain upon stated terms and yet the natural construction of the words and conduct of the parties is rather that they are inviting offers, or suggesting the terms of a possible future bargain, than mak *792 ing positive offers.” (Emphasis supplied.) (Both rules of law quoted with approval in Chiapparelli v. Baker, Kellogg & Co., 252 N. Y. 192, 197.) The court accordingly finds that the respondent was not bound by contract to serve as fiduciary. The question that remains is whether the respondent is liable on the theory of promissory estoppel.
There is an inference in the Schinasi and Rosenthal cases (supra) that if a bank has an option whether to qualify or not, it will be bound by the agreement concerning compensation only if it qualifies (Matter of Schinasi, 3 N Y 2d 22, 31, supra; Matter of Rosenthal, supra, p. 907). However in the Hayden case the court stated “the time to speak * * * was when the agreement was entered into (Matter of Hayden, supra, p. 135).
The bank relies on the Schinasi case and emphasizes the statement on page 31 that if the bank wished it could have refused to qualify as executor or trustee. A review of the will in the Schinasi case clearly indicates that the provisions authorized renunciations by the nominated fiduciaries. There is no like provision in the decedent’s will. In the Rosenthal ease, however, an executor was held to his agreement with the decedent waiving commissions in the following language (56 N. Y. S. 2d 904, 907, supra): “In any case he had the choice to qualify or not to qualify; and having qualified he must abide by the bargain which he made with the deceased.”
Unquestionably persons negotiating with professional fiduciaries, such as a bank or trust company, to assume the function of an executor or trustee must be presumed to premise any arrangement on the happening of future events, namely the death of the testator and the acceptance of that office by the bank or trust company. Neither side can be said to reasonably believe that it is a firm commitment without condition rather than merely an expression of an intention to undertake the function at some time in the future.
The burden of proving that the decedent and his estate were damaged as a result of the bank’s failure to qualify rests with those who raise the issue. The stipulation submitted indicates that there are few known facts surrounding the circumstances under which the letters were written. There is the letter of 1924 followed by the letter of reaffirmance in 1935. The will was not éxecuted until July 31, 1942 and the'decedent died on October 19, 1944. No facts are presented concerning what actions, if any, the decedent took after the 1924 letter, the 1935 letter and finally the execution of the propounded instrument in 1942. The stipulation indicates that no other wills have been *793 found. The court cannot see any justification for holding the respondent hank responsible for in excess of $600,000 in damages plus costs, attorneys’ fees, guardian ad litem fees and interest regarding a will of 1942 concerning letters written in 1924 and 1935. There is no proof that the bank was aware of the 1942 will nor are there any facts concerning any further conversations that may have occurred and the true extent of the decedent’s reliance on these letters. The petitioners have not sustained their burden of proof and the respondent bank cannot be held liable for failing to accept the office of successor trustee. Accordingly the estate’s claim against the respondent bank is dismissed.