HENRY O. DORMAN et al., Respondents, v ROBERT COHEN et al., Appellants.

First Department, February 8, 1979

## APPEARANCES OF COUNSEL

*Harvey S. Feuerstein* of counsel *(Hannah K. Flamenbaum* with him on the brief; *Herrick, Feinstein,* attorneys), for appellants.

*Jeffrey A. Shuman* of counsel *(Saxe, Bacon & Bolan, P. C.,* attorneys), for respondents.

## OPINION OF THE COURT

LUPIANO, J.

In their complaint, plaintiffs seek damages for defendants' alleged breach of a contract whereby defendants were to pay plaintiffs $1,000 per month, plus expenses, for a period of five years beginning November 1, 1976, in return for plaintiffs' services as industrial consultants. The breach alleged is the unilateral termination of the contract by defendants by refusing to pay plaintiffs' salary for May, 1977 or to make any future payment. After joinder of issue, defendants moved for summary judgment dismissing the complaint.

Subdivision a of section 5-701 of the General Obligations Law provides in pertinent part: "Every agreement * * * is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith * * * if such agreement * * * 1. By its terms is not to be performed within one year from the making thereof". As the contract which plaintiffs are relying on is for a five-year term, the Statute of Frauds must be observed. It is hornbook law that the note or memorandum of the agreement, in order to satisfy the statute, "must state the entire contract with reasonable definiteness and certainty, so that the substance thereof will appear from the writing without any resort to parol evidence" (56 NY Jur, Statute of Frauds, § 165; see *Kobre v Instrument Systems Corp.,* 54 AD2d 625, 626). The writings herein relied upon by plaintiffs fail to satisfy the statute. The letter dated November 1, 1976, on the corporate plaintiff's stationery, subscribed by the individual plaintiff as "Chairman", states that plaintiffs confirm that they "are beginning a five-year, unbreakable agreement with [defen-

dants], but breakable by [plaintiffs], for [plaintiffs'] services in advising [defendants] about the great events of the world in [defendants'] business, at a fee of $1,000 per month plus expenses". Defendants expressed disapproval of *plaintiffs' letter* by writing a note to the individual plaintiff at the bottom of said letter, as follows: "Since you have the right to break the agreement—so do I—but let's hope that will not be necessary—Please watch your expenses." This addendum was signed by defendant Robert Cohen. It is not disputed on this record that defendants mailed the plaintiffs' November 1 letter with the defendants' addendum back to plaintiffs on the same day as it was received by defendants, to wit, November 2, 1976.

Patently, the November letter, instead of proving the existence of the five-year contract claimed by plaintiffs, only establishes either of the following: (a) that no contract was ever entered into because plaintiffs' offer of a contract was rejected by defendants by the counteroffer embodied in the handwritten addendum, or (b) that the agreement was "breakable," i.e., terminable, by either party at any time during the five-year period. In either case, plaintiffs would have no cognizable claim for a breach (cf. *Watson v Gugino,* 204 NY 535, 540-542).

The second writing relied on by plaintiffs is a second letter sent by plaintiffs to defendants dated December 28, 1976, wherein it is stated: "Thank you for your note, but I hope that you understand that what we accomplished * * * is to me and I think to you, too, worth the overall five years. I would not want to enter into this unless it was, as you said, over a five year period. If that is not our understanding, please let me know." The December letter is not subscribed by defendants, and even when read with the November letter, does not satisfy the Statute of Frauds. Indeed, this December letter either demonstrates (1) that there was never any meeting of the minds of the parties on the five-year period, or (2) that the aspect of the agreement being terminable at will by either party during the five-year period was unchanged. It is relevant to note that the December 28, 1976 letter was sent, according to plaintiffs, almost two months after the commencement of the alleged five-year agreement on November 1, 1976.

As the memorandum relied on by plaintiffs establishes at most a contract materially different from the contract which

forms the basis of plaintiffs' claim, it does not satisfy the Statute of Frauds.

"As the Court of Appeals has stated, the memorandum required by the statute 'must be such that when it is produced in evidence it will inform the court or jury of the essential facts set forth in the pleading, and which go to make a valid contract'. If instead of proving the existence of the contract, the memorandum establishes that there was in fact no contract or evidenced a different contract in terms and conditions from that which the parties entered into, it fails to comply with the statute" (56 NY Jur, Statute of Frauds, § 165; *Mentz v Newwitter,* 122 NY 491, 498).

Special Term predicated its denial of defendants' motion for summary judgment on the ground that a jury question as to intent was presented by the "writings involved herein." This was incorrect, because as a matter of law, the memorandum is unamibiguous. Clearly, the defendants' handwritten addendum to the November 1 letter evidences in plain and unambiguous language their intent to have the same right of termination as plaintiffs. Since defendants' addendum showed that they intended the agreement to be terminable at will by them, a right plaintiffs also had, there is no question of fact to be determined by a jury as to whether or not defendants had such right.

"Where the language of a contract is unambiguous and the words are plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation, for effect must be given to the intent as indicated by the language itself. The rules of construction are to be applied to interpret language of ambiguous or doubtful meaning only" (10 NY Jur, Contracts, § 189).

In the memorandum relied on by plaintiffs it is explicitly stated by defendants in the addendum subscribed by them that the agreement was terminable at will during its term. Thus the defendants' explicit rejection of a material term of the contract, to wit, that the agreement was terminable at will only by plaintiffs and as to defendants would be binding for the full five-year term, cannot be deemed an acceptance of such term (see *Juilliard v Trokie,* 139 App Div 530, affd 203 NY 604).

Regarding the December 28 letter of plaintiffs, since the complaint is unverified and plaintiffs' affidavit in opposition to defendants' motion for summary judgment was sworn to by

plaintiffs' attorney, who had no first-hand knowledge of the facts, the record is barren of any sworn statement as to plaintiffs' mailing of such letter. However, assuming this letter was sent by plaintiffs and received by defendants, the fact that defendants never subscribed or assented to its terms in writing renders it immaterial on the issue of whether it reflects the terms of the prior oral agreement alleged to have been made by the parties. Plaintiffs cannot overcome the Statute of Frauds defense on the basis of a supplemental writing which was prepared by plaintiffs, but unsigned by the defendants. As noted in *Solin Lee Chu v Ling Sun Chu* (9 AD2d 888-889): "Nor may the plaintiff rely upon the unexecuted document to supply the missing terms. Unlike the situation in the *Crabtree* case [305 NY 48] the document here offered was not prepared by the defendant or at his instance. On the contrary it was prepared by the plaintiff's attorney and offered to the defendant for signature but he refused to sign. In the *Crabtree* case all of the writings relied upon—which when taken together contained all of the essential terms of the agreement—were documents of the defendant and prepared by the defendant. To permit the unsigned document prepared by the plaintiff to serve as a portion of the requisite memorandum would open the door to evils the Statute of Frauds was designed to avoid."

Finally, the agreement urged by plaintiffs in their complaint and evidenced by their letter of November 1, 1978 (without taking into consideration the defendants' addendum to said letter) sets forth an agreement for a five-year term for certain services of plaintiffs, with the plaintiffs, but not defendants, having the option to break the agreement. No other terms are set forth by plaintiffs. Accordingly, the agreement is illusory for lack of mutuality of obligation. The memorandum (the November letter) does not speak in terms of a unilateral contract but patently envisions a bilateral contract. While mutuality of obligation does not mean equality of obligation, it does mean that each party *must* be bound to some extent. In the employment agreement urged by plaintiffs as demonstrated *on this record,* defendants as employer of plaintiffs would be bound to honor the agreement of employment for its full five-year term, but the plaintiffs, those being employed, would have the unilateral right to cancel. As possessor of such right, plaintiffs did not, in effect, bind themselves to do anything (see *Schlegel Mfg. Co. v Cooper's Glue Factory,* 231 NY

459; see, also, *Thomas v Anthony,* 30 Cal App 217; cf. *Wood v Duff-Gordon,* 222 NY 88).

■ ■ Thus defendants *on this record* are entitled to summary judgment dismissing the complaint for the following four reasons: (1) the contract sued upon by plaintiffs is different from that demonstrated by the memorandum, (2) the memorandum demonstrates that no agreement was reached, or (3) that the agreement so reached was terminable at will by either party and in consequence defendants' termination of the agreement does not constitute a breach, and (4) the agreement relied on by plaintiffs lacks mutuality of obligation and is illusory.

■ We are not confronted here with the Statute of Frauds governing contracts to sell goods and sales of goods (Uniform Commercial Code, § 2-201) wherein the required writing need not contain all the material terms,* but with an agreement for services governed by section 5-701 of the General Obligations Law wherein the writing or memorandum "must contain expressly or by reasonable implication all the material terms of the agreement * * * (Poel v. Brunswick-Balke-Collender Co., 216 N. Y. 310, 314; Friedman & Co. v Newman, 255 N. Y. 340; Restatement, 2d, Contracts, § 207 [Tent. Draft No. 4, 1968])" *(Cohon & Co. v Russell,* 23 NY2d 569, 575). In effect, section 2-201 of the Uniform Commercial Code constitutes a partial exception of the Statute of Frauds in that it ameliorates the writing requirement (see *Marlene Inds. Corp. [Carnac Textiles],* 45 NY2d 327, 331).

"In order to satisfy the statute the 'memorandum' must, on its face and without the addition of parol evidence, contain the essential terms of the agreement, *e.g.,* Drake v. Seaman, 27 Hun 63, affirmed 93 N.Y. 230 (1884) * * * The concept of 'essentiality' is relative. A term is 'essential', and must thus appear in the 'memorandum', if it seriously affects the rights and obligations of the parties and there is a significant evidentiary dispute as to its content" *(Ginsberg Mach. Co. v J. & H. Label Processing Corp.,* 341 F2d 825, 828). Defendants insist that whatever agreement existed between the parties was terminable at will by either of the parties. Plaintiffs to the contrary assert that the defendants were bound to honor the

---

* The official Comment to section 2-201 of the Uniform Commercial Code states that "[t]he changed phraseology of this section is intended to make it clear that: 1. The required writing need not contain all the material terms of the contract" (McKinney's Cons Laws of NY, Book 62½, Part 1, p 117).

agreement for its full five-year term and that it was not terminable at the will of the defendants. The right to terminate an agreement is so inextricably interwoven with the issue of duration or term as to clearly be a subject of significant evidentiary dispute, which also seriously affects the rights and obligations of the parties. The very nature of the purported agreement herein is such that the parties' obligations and rights would be radically altered if plaintiffs' version or defendants' version of the facts rather than the other was accepted. Both letters, taken together, do not supply the missing essential term and are insufficient to satisfy the statute. This court should be loath to permit supplying of this essential term by parol evidence under a convoluted extention of the *Crabtree* rationale in contravention of the policy considerations underlying the Statute of Frauds so aptly observed in *Solin Lee Chu v Ling Sun Chu* (9 AD2d 888, *supra).*

Relevant on this point is the fact that the record on this motion for summary judgment does not warrant a studied effort to salvage the plaintiffs' weak position. Defendants submit an affidavit of a party having knowledge of the facts in which it is clearly stated that at no time did the plaintiffs ever advise that the addendum was unacceptable and that the December 28 letter was never received. There is no affidavit from a party having knowledge of the facts submitted by plaintiffs countervailing these factual assertions. Instead, the affidavit of plaintiffs' counsel in opposition blithely asserts that there are numerous issues of fact, to wit: "a. whether there was a contract; b. what were the terms of the contract; c. whether the defendants breached the contract, etc., etc."

A motion for summary judgment searches the record, and a party opposing a motion for such relief must reveal his proofs and demonstrate that a triable factual issue is genuinely presented. Plaintiffs' opposition *on this record* is deficient in this requirement.

Finally, one last observation regarding the *Crabtree* case: The Court of Appeals specifically noted that the writings relied on to constitute the memorandum sufficient to satisfy the Statute of Frauds contained *all* of the essential terms of the contract. These writings consisted of two payroll cards of defendant, each subscribed by an officer of defendant, and an unsigned office memorandum *of defendant* bearing in pertinent part the notation "2 years to make good." It was noted respecting the subscribed writings—the two receipts—that "it

is enough to meet the statute's demands, that they were signed with intent to authenticate the information contained therein and that such information does evidence the terms of the contract. [Citations] Those two writings contain all of the essential terms of the contract * * * except that relating to the duration of plaintiff's employment" *(Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48, 54). The missing term was supplied by defendant's unsigned memorandum which was viewed as clearly evincing the fact that the parties agreed to a definite term of two years after which if plaintiff did not "make good," he would be subject to discharge *(Crabtree, supra,* p 57). Thus the Court of Appeals concluded that the danger of fraud or perjury attendant upon the admission of parol evidence was at a minimum because "[n]one of the terms of the contract are supplied by parol. *All of them must be set out in the various writings presented to the court,* and at least one writing, the one establishing a contractual relationship between the parties, must bear the signature of the party to be charged, while the unsigned document must on its face refer to the same transaction as that set forth in the one that was signed" *(Crabtree, supra,* pp 55-56; emphasis supplied). In our case the two writings, one signed and one unsigned, do not set forth all of the essential terms of the contract; the signed writing does not authenticate plaintiffs' version of the contract to the effect that defendants have no right of termination; the signed writing contains information which clearly does not evidence, indeed it contradicts, the terms of the contract alleged by plaintiff, to wit, a five-year contract with no right of termination on defendants' part; and, finally, the second of the two writings was issued unilaterally by the plaintiff and is not a writing of defendant or one whose issuance was controlled by defendant in any manner.

The observation in the dissent that "with respect to mutuality of obligation, it is a perfectly normal contractual arrangement that allows one party to have an option to terminate while the other one does not" while correct as an abstract proposition, is misleading not only in the context of the legal analysis mandated by the issues raised on this appeal, but also in the context of the authority given for such statement. In New York Jurisprudence (Vol 10, Contracts, § 10, p 533) the text reads as follows: "But *there is no mutuality of obligation where one party can terminate his promise at will.* The mere fact, however, that one party reserves the right to terminate

the contract *on notice* does not deprive the contract of mutuality" (emphasis supplied). It is well recognized that a restricted option to terminate an agreement does not destroy its mutuality of obligation (see *Satenstein v Satenstein,* 42 Misc 2d 398, affd 20 AD2d 700)—for example, the reserving to one of the parties the right to terminate the agreement upon 30 days' notice does not deprive the agreement of the element of mutuality *(McCall Co. v Wright,* 133 App Div 62, 68); the giving to one of the parties the right to terminate on five days' notice similarly does not destroy mutuality of obligation *(Realty Adv. & Supply Co. v Engelbert Tyre Co.,* 89 Misc 371). Thus, as aptly stated in Whitney, Law of Contracts ([6th ed], § 49, p 114): "there is no mutuality of obligation in an agreement for employment which expressly reserves to the employer the right to cancel the agreement at any time without notice, but if the agreement provides that the employer may cancel only upon giving notice within a specified time, there is mutuality of obligation for the employer is bound to employ the employee for at least that period of time." Further elucidation of this legal principle is set forth in section 79 of the Restatement of Contracts.

Accordingly, the order of the Supreme Court, New York County (KLEIN, J.), entered September 21, 1978, denying defendants' motion for summary judgment dismissing the complaint, should be reversed, on the law, with $75 costs and disbursements payable by respondents to appellants, and the motion granted.

KUPFERMAN, J. (dissenting). I dissent and would affirm. The motion to dismiss the complaint is based on the Statute of Frauds, the language of which applicable provision of the General Obligations Law is set forth in the majority opinion. The Statute of Frauds is not meant to be a way of avoiding an agreement, but rather a method of insuring that the party to be charged has entered into an agreement. (Cf. *DFI v Greenberg,* 41 NY2d 602, 606.)

As the majority opinion points out, there was an addendum signed by the defendant, which to my mind clearly shows compliance with the applicable language of the Statute of Frauds. (See *Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48.) The parties performed under the agreement for at least three months after the commencement thereof before the defendant paid up-to-date and terminated or attempted to terminate plaintiff's service.

Although the motion was not directed to it, with respect to mutuality of obligation, it is a perfectly normal contractual arrangement that allows one party to have an option to terminate while the other one does not. (9 NY Jur, Contracts, § 10, p 533.)

BIRNS and EVANS, JJ., concur with LUPIANO, J.; KUPFERMAN, J. P., dissents in an opinion.

Order, Supreme Court, New York County, entered on September 21, 1978, reversed. Appellants shall recover of respondents $75 costs and disbursements of this appeal.