**ROBERT L. HAAG, INC., Plaintiff,**

v.

**SWIFT & COMPANY, Defendant.**

**No. 80 Civ. 2460 (CBM).**

United States District Court,
S. D. New York.

Jan. 8, 1982.

Hall, Dickler, Lawler, Kent & Howley by Norman L. Faber, New York City, for plaintiff.

Milgrim, Thomajan, Jacobs & Lee by Alfred T. Lee, New York City, for defendant.

MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

This is an action brought by Robert L. Haag, Inc. (Haag), the head of an experimental marketing program, against Swift & Company (Swift), a manufacturer of brand-named consumer food products. The dispute between the parties arose out of an agreement entered into in 1977 in which Haag extended to Swift, for a monthly fee, the exclusive right to participate in the processed meats category of Haag's marketing program. The complaint alleges three causes of action: (1) Breach of contract; (2) Violation of § 43(a) of the Lanham Trade-Mark Act; and (3) A related common law claim of unfair competition.

Swift moved for summary judgment on Counts 1, 2 and 3 of the complaint and Haag cross-moved for summary judgment on the 2nd, 3rd, 4th, 5th and 7th affirmative defenses asserted by Swift. On December 17, 1981, this court denied both parties' motions and reserved decision on one issue presented in Swift's motion to dismiss Count One of the complaint and Haag's cross-motion for summary judgment on the

5th affirmative defense: Whether the contract is unenforceable as a matter of law because of non-mutuality of remedies. Having now determined that the contract is unenforceable, this court grants Swift's motion and denies Haag's cross-motion on this issue.

*Facts*

The undisputed facts relevant to the instant motion are as follows. On April 4, 1977, the parties entered into a letter agreement in which Swift agreed to pay Haag a monthly fee for the exclusive right to participate in the processed meats category of Haag's marketing program. The program essentially involves an arrangement whereby participating food manufacturers agree to pay a stipulated percentage of their profits to food retailers on products included in the program. The payments are based upon the individual retailer's purchases of these products during a specified period. Each manufacturer is additionally obligated to pay Haag a monthly fee for being allowed to participate in the program. The manufacturer's expectation is that participation in the program will increase its sales and, consequently, its profits.

The agreement between the parties here included a number of Swift's processed meat products, as well as Swift's Peter Pan peanut butter, a product not involved in the instant contract claim. It provided that Swift would test the program in "Area I" (Cincinnati, Columbus and Dayton, Ohio) for a monthly fee to Haag of $5,000 per month. The agreement further provided that in or about September, 1977, Swift's participation would expand to "Area II" (the balance of Ohio, plus Indiana and Western Pennsylvania) with an increase in the monthly fee to $6667.

For various reasons which are in dispute, expansion into Area II was postponed. Swift participated in Area I for a total of two years and then, in July, 1979, terminated the agreement by letter to Haag. Up until that point, Swift had paid Haag $5,000 per month since June, 1977. Swift thereafter paid Haag an additional $26,668, representing $6667 per month for the four

month period of August through November, 1979. Haag now claims that it is entitled to recover continuing fees from December, 1979 to date at the rate of $6667 per month.

*Discussion*

Two clauses in the agreement relating to termination and breach are relevant to an inquiry into whether the agreement is void for want of mutuality. Clause IV states that either party may cancel the agreement on 90 days notice but only after Swift has participated in Area II for at least 12 months. Clause VI provides that "[n]either party shall be liable to the other party for damages arising from or due to the breach of [the] agreement, except for the [monthly] payments Swift & Company is obligated to make to Robert L. Haag, Inc . . ." under the contract.

■ Swift's argument is essentially that because Haag would never be liable for damages for breach of the contract, the agreement was "wholly optional and illusory" and thus unenforceable for want of mutuality. Haag, on the other hand, asserts that the contract is entirely valid as a matter of law. In support of this assertion, Haag relies on cases upholding liquidated damage clauses and clauses exempting a party from liability for negligence in the performance of its duties under a contract. Neither situation, however, addresses the question raised by the instant motion: Whether a clause totally exonerating one party from liability for breach of a contract renders the contract unenforceable. After careful consideration, the court concludes that it does.

■ In *Oscar Schlegel Mfg. Co. v. Cooper's Glue Factory*, 231 N.Y. 459, 132 N.E. 148 (1921), the Court of Appeals refused to enforce a contract in which the defendant had agreed to furnish the plaintiff's requirements for glue at a specified price because of lack of mutuality. Finding that the plaintiff had assumed no binding obligations under the contract and thus that the plaintiff could not have been sued for breach, the court laid down the following

rule: "Unless both parties to a contract are bound so that either can sue the other for breach, neither is bound." 231 N.Y. at 462, 132 N.E. 148. Guided by this principle, the conclusion is inescapable that because Clause VI of the instant agreement prevents Haag from ever being sued for breach, the contract is unenforceable.

Various New York cases applying *Oscar Schlegel Mfg. Co.* to diverse factual settings have reached the same result. In *Dorman v. Cohen*, 66 A.D.2d 411, 413 N.Y.S.2d 377 (1st Dept. 1979), the contract under consideration was a five year employment agreement under which the plaintiffs, but not the defendants, had the option to break the agreement at any time within the five year period. Holding the agreement illusory for lack of mutuality of obligations, the court stressed that "while mutuality of obligation does not mean equality of obligation, it does mean that each party *must* be bound to some extent." 413 N.Y.S.2d at 380 (emphasis in the original).

*In re Johnson's Estate*, 74 Misc.2d 788, 346 N.Y.S.2d 283 (Surr.Ct.1973) involved an agreement in which a bank, while agreeing to serve as testamentary trustee, reserved an option not to serve. The court found that with respect to the "complete freedom to serve or not to serve . . . it is clear that any alleged agreement or promise was purely illusory and the 'agreement,' lacking mutuality of obligations, is unenforceable as a contract." 74 Misc.2d at 791, 346 N.Y. S.2d 283. *See also J.D. & H. Enterprises Corp. v. Byrne*, 12 Misc.2d 1066, 175 N.Y. S.2d 726, 728 (Sup.Ct. Kings Cnty. 1958).

In the instant case, although Haag agreed under Clause IV not to terminate until 90 days after Swift had participated in Area II for one year, Clause VI allowed it to ignore this agreement and breach the contract with absolute impunity. As the possessor of this right, Haag did not, in effect, bind itself to do anything. Swift, in contrast, was bound to participate in Area II for at least 15 months or face substantial liability for breach of the contract. The respective obligations of the parties thus can hardly be characterized as mutual. Instead, because Haag could choose to breach the contract without fear of any consequent legal obligations, the agreement is illusory and without binding force.

Accordingly, Haag's cross-motion for summary judgment on defendant's fifth affirmative defense is denied and Swift's motion for summary judgment on Count One of the complaint is granted.

SO ORDERED.