[879 NYS2d 387]

Joseph I. Rosenzweig, Respondent, v Radiah K. Givens, Appellant.

First Department, January 8, 2009

2

## APPEARANCES OF COUNSEL

*Law Offices of Barbara H. Katsos, P.C.*, New York City (*Barbara H. Katsos* of counsel), for appellant.

*Marc E. Elliott*, New York City, for respondent.

## OPINION OF THE COURT

MOSKOWITZ, J.

Given the highly unusual circumstances of this case, we do not believe that the motion court should have granted summary judgment to plaintiff at this early juncture, prior to discovery. Plaintiff Joseph Rosenzweig commenced this action to foreclose on two mortgages he issued to defendant Radiah Givens on May 10, 2002, in connection with the balance due on defendant's alleged purchase of a condominium apartment. The apartment secured the loans. It is undisputed that defendant herself has never made a mortgage payment.

However, these were no ordinary, arm's length mortgages. At the time plaintiff, an attorney, issued the mortgages, he was involved in a romantic relationship with defendant, a student 19 years younger. Unlike most mortgage transactions, it was plaintiff who paid the 10% down payment on the property. After the closing, plaintiff also paid the carrying costs on the apartment and most household expenses.

Plaintiff had his long-term friend and colleague, attorney Thomas Gazianis, represent defendant at the apartment's closing and both plaintiff and defendant in connection with the loans. At or directly after the May 10, 2002 closing, the parties signed a letter, as "accepted and agreed to," acknowledging Gazianis's joint representation in connection with plaintiff's loans to defendant, and of defendant in connection with her purchase of the apartment. Gazianis noted in the letter that he had a prior social and working relationship with plaintiff and recommended that both parties obtain separate counsel as a potential conflict existed. The letter also described the transaction between the parties as two mortgage loans being made to defendant "by Joseph I. Rosenzweig, in the combined amount of $285,300, and in connection with the mortgage and Note [defendant] has given to Mr. Rosenzweig therewith."

Unbeknownst to defendant at the time, plaintiff was married with children.

Almost two years later, on or about April 13, 2004, the parties married in Jamaica. Plaintiff was still married to another

woman. The marriage register reflects that plaintiff identified himself as a bachelor and attorney. On April 19, 2005, plaintiff forged defendant's signature on a loan application for $150,000 that the apartment was to secure.

Plaintiff did not record the second mortgage until July 7, 2005, over three years after the closing. Defendant contends that plaintiff did this after she had found out that he had forged her signature on the loan application and after plaintiff's bigamous marriage became known to plaintiff's first wife. Plaintiff contends that he did not record the second mortgage until three years later to avoid certain taxes.

Eventually, defendant discovered that plaintiff was already married. In February 2007, the parties' bigamous marriage was annulled.

Defendant contends that the apartment was a gift to her from plaintiff. She contends that she was a student at the time of the transaction and that plaintiff knew she could not make the monthly payments. In support, defendant points out that the plaintiff paid the monthly expenses on the apartment including maintenance, household and related charges. Defendant also notes that plaintiff never asked her for mortgage payments until after she discovered his duplicity. Defendant explains that plaintiff induced her to sign the mortgage documents by claiming her signature was necessary to effectuate the gift. She says she never questioned this because he was a lawyer and she loved and trusted him. She claims she never would have signed had she known these were mortgage documents because she could not afford to make the monthly payments.

In her answer, defendant asserted affirmative defenses sounding in fraud and bad faith and two counterclaims. The first counterclaim is for fraudulent inducement to marry. The second counterclaim relates to plaintiff's fraud in inducing her to enter into the mortgage agreements and his forgery of her name on a bank loan.

 Plaintiff argues that the mortgage terms are clear and unambiguous and cannot be reasonably read to indicate anything other than a loan. However, "[a]greements between spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost of good faith" (*Christian v Christian*, 42 NY2d 63, 72 [1977]). Thus, courts exercise strict surveillance of agreements between spouses (*see e.g. Levine v Levine*, 56 NY2d 42, 47 [1982]; *Barchella v Barchella*, 44 AD3d 696, 697 [2007]). Although the parties were not married on the

day defendant signed the mortgage agreements, their relationship, as their eventual marriage demonstrates, was sufficiently analogous to at least raise a question as to whether or not a fiduciary relationship existed to raise the level of scrutiny of this transaction to one of strict surveillance (*see Matter of Greiff*, 92 NY2d 341, 347 [1998] [noting "the unique character of the inchoate bond between prospective spouses" and that "these relationships are almost universally beyond the pale of ordinary commercial transactions," Court required "exceptional scrutiny" in evaluating prenuptial agreement]; *Brody v Brody*, 20 Misc 3d 350, 356-357 [Sup Ct, Nassau County 2008] [applying standard to prenuptial agreement]). Thus, defendant has detailed circumstances that raise an issue of fact about whether a fiduciary relationship existed between the parties, including their romantic involvement that resulted in a marriage (albeit a sham one because plaintiff was a bigamist), their age difference and that plaintiff was a lawyer.

Reasoning that these were mortgage documents, the motion court, without discovery, dismissed defendant's claims that she was fraudulently induced to sign them on the ground that her allegations did not rise to the level of fraud. However, this analysis fails to take into account the highly unusual circumstances of this case and fails to apply the level of scrutiny appropriate considering the relationship between these parties. Given the surrounding circumstances, especially the nature of the parties' relationship, defendant has sufficiently raised an issue of fact about whether plaintiff tricked her into signing the mortgage documents by claiming they were merely a formality to effectuate his gift to her. That defendant did not have her own lawyer, but relied on a friend of plaintiff, further raises questions about this transaction (*see Bartlett v Bartlett*, 84 AD2d 800 [1981] [separation agreement was product of "overreaching" where one attorney represented both husband and wife but acted "essentially as the defendant husband's attorney"]). At the very least, the motion court should not have granted summary judgment without affording defendant discovery.

The dissent argues that defendant fully understood the nature of the transaction because she signed a letter, dated May 10, 2002, from plaintiff's attorney/friend that informed her about the nature of the transaction and advised her to obtain separate counsel. However, as cases have repeatedly held, agreements between spouses or prospective spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost

good faith (*see Christian v Christian*, 42 NY2d 63, 72 [1977]; *see also Matter of Greiff*, 92 NY2d 341, 347 [1998]; *Colello v Colello*, 9 AD3d 855, 859 [2004]). Given the relationship here, and the surrounding circumstances, it was inappropriate to grant relief to the plaintiff without closely scrutinizing the agreement, including further development of the record.

*Marmelstein v Kehillat New Hempstead: The Rav Aron Jofen Community Synagogue* (11 NY3d 15 [2008]) is not to the contrary. In that case, the Court of Appeals held that there was no fiduciary relationship between a congregant and the rabbi of the synagogue. The plaintiff had claimed that the rabbi had induced her into a $3^1/_2$-year intimate relationship by suggesting that his "therapy" would help her find a husband. The Court held that there was no fiduciary relationship between the rabbi and the congregant because no cause of action could be maintained "for an extended voluntary sexual affair between consenting adults" (*id*. at 22). Here, by contrast, the parties held themselves out as husband and wife and defendant at least believed they were husband and wife.

The record also contains indications that plaintiff did intend the apartment as a gift. For example, plaintiff did not demand payment from defendant for three years and then not until their relationship was disintegrating because defendant had discovered that plaintiff had forged her signature on a loan application and had another wife. While recognizing that the mortgage documents contain non-waiver clauses, the timing of plaintiff's demand for payment is suspicious. Moreover, it would be unusual for someone who intended to make a loan to also provide the down payment, pay the maintenance and pay most other household expenses. Because of the relationship between the parties, plaintiff presumably would have known that defendant could not afford the mortgages. Given that the marriage was a sham and that plaintiff forged defendant's signature on a loan application for $150,000, it is plausible that plaintiff did trick defendant into thinking he was gifting her the apartment in an elaborate plot to obtain loan proceeds under her name.

■ It was also error to dismiss defendant's first counterclaim for deceit in the inducement to enter a void marriage. Accepting as true defendant's allegations that plaintiff falsely misrepresented himself to be single, thereby inducing her to enter into a bigamous marriage, change her status and sustain damages, defendant has stated a cause of action (*see Tuck v Tuck*, 14 NY2d 341, 344 [1964]).

■ However, the court was correct to dismiss defendant's second affirmative defense that plaintiff waived his claims under the mortgages because he did not demand payment for over a three-year period. This is because the mortgage documents contain unambiguous non-waiver clauses that courts uniformly enforce (*see e.g. Awards.com v Kinko's, Inc.* 42 AD3d 178, 188, [2007], *lv dismissed* 9 NY3d 1025 [2008]). Nevertheless, as explained above, an issue of fact remains as to whether the mortgages are enforceable in the first instance. We have considered appellant's remaining arguments and find them unavailing.

Accordingly, the order of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered October 4, 2007, which granted plaintiff summary judgment on his claim to foreclose on certain mortgages, dismissed defendant's first, second and third affirmative defenses and two counterclaims, and struck defendant's claim for punitive damages, should be modified, on the law, to deny plaintiff's motion for summary judgment on his foreclosure claim, reinstate the first and second counterclaims and reinstate the first affirmative defense, and otherwise affirmed, without costs.

FRIEDMAN, J. (dissenting in part). I concur with the majority in reinstating the first counterclaim asserted by defendant Radiah K. Givens against plaintiff Joseph I. Rosenzweig, which seeks damages for fraudulent inducement to enter into an invalid marriage (*see Tuck v Tuck*, 14 NY2d 341 [1964]). However, substantially for the reasons stated by Supreme Court (Barbara R. Kapnick, J.) in its decision dated July 11, 2007 (2007 NY Slip Op 32132[U]), I would, unlike the majority, affirm the order appealed from insofar as it (1) granted summary judgment to plaintiff on his cause of action to foreclose on two mortgage loans he made to defendant, (2) dismissed defendant's first affirmative defense of fraudulent inducement, and (3) dismissed defendant's second counterclaim for rescission of the mortgages.*

In a transaction that closed on May 10, 2002, defendant purchased a condominium from third-party sellers using the proceeds of a loan from plaintiff. The loan was secured by two mortgages on the condominium. It is undisputed that the parties had an intimate relationship at the time of the transaction.

---

* I concur with the majority's affirmance of the dismissal of defendant's second and third affirmative defenses.

That relationship led to an invalid marriage about two years after the purchase of the condominium. The marriage has since been annulled, and the parties' relationship has ended.

In this action, plaintiff seeks to foreclose on the mortgages. On his motion for summary judgment, plaintiff established that defendant has defaulted under the terms of the loan. Defendant does not dispute the facts establishing her default, but asserts the affirmative defense of fraudulent inducement, claiming that plaintiff led her to believe that he was giving her the condominium as a gift. Defendant also asserts a counterclaim for rescission of the mortgages based on her claim of fraudulent inducement.

I agree with the motion court that, on this record, defendant's claim of fraudulent inducement is untenable as a matter of law. In particular, I note that defendant's claim that she did not understand the nature of the transaction is conclusively refuted by her countersignature on a letter to the parties from the attorney who represented both of them at the closing. That letter, dated May 10, 2002 (the May 10 letter), states:

> "Re:
>
> *Loan from Rosenzweig to Givens* and Mortgage given in connection with same; Purchase of Givens Coop [*sic*] Apartment 3A at 181 Seventh Avenue New York, New York 10011

"Dear Ms. Givens and Mr. Rosenzweig:

> "This is to confirm that you have both retained me, Thomas L. Gazianis, as your attorney. I am Ms. Givens' attorney with respect to the transfer of the referenced apartment from [the sellers] to Radiah K. Givens, as Purchaser. I am also Ms. Givens' attorney with respect to *the First and Second Mortgage Loans being made to her by Joseph I. Rosenzweig*, in the combined amount of $285,300, and in connection with the mortgage and Note Ms. Givens has given to Mr. Rosenzweig therewith. I am also Mr. Rosenzweig's attorney *in his capacity as lender and mortgagee with respect to the $285,300 loan and mortgage referenced above*. I have also worked with Joseph I. Rosenzweig before and have a friendship relationship with him.

> "You understand that I am representing both of you

in connection with the loan transaction, so the potential for a conflict of interest exists should a dispute arise between you. Since my loyalties are divided two ways, I have advised both of you to obtain separate counsel.

"Nevertheless, you have specifically refused to obtain such separate counsel and do hereby waive any claim you may have or may develop in the future with respect to any conflict of interest on my part." (Emphasis added.)

At the end of the May 10 letter, the signatures of plaintiff and defendant appear beneath the legend "ACCEPTED AND AGREED TO." The May 10 letter is not discussed either in defendant's pleading or in her affidavit opposing summary judgment. The majority's supposition that the May 10 letter may have been signed by the parties "directly after" the closing, rather than at the closing itself, finds no evidentiary support in the record.

In light of defendant's undisputed acceptance of the terms of the May 10 letter, and for the other reasons discussed in the motion court's decision, I respectfully dissent to the extent the majority modifies the order appealed from to deny plaintiff summary judgment on his foreclosure claim and to reinstate defendant's first affirmative defense and second counterclaim. To reiterate, defendant's signature on the May 10 letter conclusively negates her claim that she did not understand that plaintiff was *lending* her the $285,300 that was used to purchase the condominium in her name. Tellingly, defendant's pleading and affidavit opposing summary judgment do not even try to explain away her signature on the May 10 letter. Nonetheless, the majority, essentially ignoring both the May 10 letter and defendant's silence about it, overturns the motion court's well-considered decision and reinstates defendant's fraudulent inducement affirmative defense and counterclaim.

The majority's attempt to justify its action by reference to fiduciary principles is not persuasive. The plain-English May 10 letter establishes that defendant, a person who has attended college and does not claim to suffer from any disability, understood the nature of the transaction, and had been advised that she should obtain a lawyer of her own. In this regard, I note that defendant was 29 years old at the time of the transaction. The majority sees fit to mention that plaintiff is 19 years older than defendant, but I fail to see how the age difference

furnishes grounds for excusing defendant from obligations she freely undertook. It should also be noted that, while defendant's answer alleges that "[s]he didn't understand what a mortgage was," this dubious claim is not repeated in defendant's affidavit opposing summary judgment.

In a nutshell, if defendant knew that plaintiff was lending her the money for the purchase of the condominium, her fraudulent inducement claim collapses. The majority does not dispute this, and even admits that the May 10 letter "informed [defendant] about the nature of the transaction and advised her to obtain separate counsel." Thus, there is no logically coherent basis for sustaining the fraudulent inducement claim. This being the case, an observer might reasonably conclude that the majority's disposition of this appeal is motivated by a desire to punish plaintiff for being a scoundrel. Certainly, the picture of plaintiff's character emerging from the record and briefs on this appeal supports such a conclusion, and, as disclosed in his own appellate brief, plaintiff, an attorney, has been referred to the Departmental Disciplinary Committee based on his invalid marriage to defendant. Plaintiff's deficiencies of character do not, however, justify a refusal to apply clear legal principles that plainly govern the case. While the majority states that discovery is required to determine whether defendant's fraudulent inducement claim has merit, defendant herself—who has direct personal knowledge of the transaction at issue—makes no argument that any discovery is needed, and repeatedly expresses the desire to go to trial. On the facts established by this record, she could not prevail at trial, as a matter of law, on her fraudulent inducement claim.

Mazzarelli, J.P., and Sweeny, J., concur with Moskowitz, J.; Friedman, J., dissents in part in a separate opinion.

Order, Supreme Court, New York County, entered October 4, 2007, modified, on the law, to deny plaintiff's motion for summary judgment on his foreclosure claim, reinstate the first and second counterclaims and reinstate the first affirmative defense, and otherwise affirmed, without costs.