*Roberts v. Weight Watchers Int'l, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 2nd day of November, two thousand seventeen.

Present:   ROBERT A. KATZMANN,
                      *Chief Judge*,
               RAYMOND J. LOHIER, JR.,
               CHRISTOPHER F. DRONEY,
                      *Circuit Judges*.

_____

RAYMOND M. ROBERTS, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

                      *Plaintiff-Appellant*,

                      v.                                              No. 16-3865

WEIGHT WATCHERS INTERNATIONAL, INC.,

                      *Defendant-Appellee*.

_____

For Plaintiff-Appellant:          SAMUEL K. ROSEN (Robert I. Harwood and Danielle Quitt, *on the brief*), Harwood Feffer LLP, New York, NY.

For Defendant-Appellee:       AMY MASON SAHARIA (Joseph G. Petrosinelli and Connor S. Sullivan, *on the brief*), Williams & Connolly LLP, Washington, DC.

Appeal from a judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Raymond Roberts appeals from a final judgment entered by the district court (Koeltl, *J.*) on November 14, 2016, dismissing with prejudice his amended complaint against Defendant-Appellee Weight Watchers International, Inc., for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review *de novo* a dismissal for failure to state a claim, accepting as true all material factual allegations in the complaint and drawing all reasonable inferences in plaintiffs' favor." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). In addition to considering the facts alleged, "it is well established" that courts "may also rely upon . . . 'documents incorporated by reference in the complaint,'" such as the parties' underlying contract here. *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). "Under New York law, which the parties agree governs their contract dispute, the question of whether a written contract is ambiguous is a question of law for the court," and where "the contract is unambiguous, its meaning is likewise a question of law for the court to decide." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396–97 (2d Cir. 2009). "In interpreting an unambiguous contract, the court is to consider its 'particular words' not in isolation 'but in the light of the obligation as a whole and the intention of the parties as manifested thereby.'" *Id.* at 397 (alteration omitted) (quoting *Kass v. Kass*, 696 N.E.2d 174, 180-81 (N.Y. 1998)).

Roberts signed up for Weight Watchers' Online*Plus* service on September 28, 2015, at which time he assented to Weight Watchers' Subscription Agreement. Following an unsuccessful update in November 2015, Roberts and other subscribers were "unable to fully utilize [Weight Watchers'] online website and Mobile App," through which they accessed Online*Plus.* App. 10. Although the complaint is replete with references to harms inflicted on other subscribers, the only specific injury that Roberts alleges he personally suffered is that he "was unable to utilize the Mobile App" on March 17, 2016.[1] App. 16. Citing the dysfunctional nature of Weight Watchers' website and mobile application, Roberts alleges that Weight Watchers breached the Subscription Agreement and violated New York General Business Law § 349, though he later abandoned his General Business Law claim.

In pertinent part, the Subscription Agreement granted Roberts a "limited right to access, use and display [Weight Watchers'] Website and the material provided [t]hereon, and the Fee-Based Products that [he] subscribed to."[2] App. 26. In a section entitled "Disclaimers of Warranties," the agreement further stated that "the products, offerings, content and materials (including, without limitation, the Fee-Based Products) on th[e] Website are provided 'as is' and without warranties of any kind, either express or implied," making clear that Weight Watchers did not "warrant that th[e] Website or any function contained in th[e] Website will be uninterrupted or error-free" or "that defects will be corrected." App. 43 (emphasis omitted). Based on these provisions, the district court held that Roberts failed to state a claim for breach of

---

[1] The district court read the complaint to allege that Roberts also suffered the loss of certain data he provided to Weight Watchers, but the complaint states only that "subscribers" and "the Class" have "suffered total loss of their previously entered information," without any further suggestion that Roberts personally experienced such data loss. App. 17. Because plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent," the complaint did not adequately allege that Roberts suffered such harm. *Warth v. Seldin*, 422 U.S. 490, 503 (1975).

[2] The Subscription Agreement defines the term "Website" to mean "the websites which are owned or operated by Weight Watchers.com, Inc. . . . and [its] affiliates . . . , including, without limitation, . . . any . . . website that [Weight Watchers] may own or operate currently or in the future," while "Fee-Based Products" are defined as Weight Watchers' "fee-based products or offerings including Online*Plus* and Personal Coaching." App. 25–26.

contract because he "got what he bargained for: the ability to access, use and display Online*Plus* on an 'AS IS' basis." *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 751 (S.D.N.Y. 2016). Because we agree with the district court, we need not reach the question of whether other provisions of the parties' contract barred Roberts's claims by limiting his right to sue for money damages, an alternative ground for dismissal discussed by the district court.

Roberts raises three main arguments on appeal with respect to whether the agreement was breached. Roberts first argues that the agreement's "as is" clause applies only to Weight Watchers' Fee-Based Products, not to its Website. That is simply incorrect, as the clause refers to all "products, offerings, content and materials" on Weight Watchers' Website, which expressly includes—but is not limited to—the Fee-Based Products. App. 43; *see also Espinal v. City of N.Y.*, 967 N.Y.S.2d 29, 30 (N.Y. App. Div. 2013) (finding clause that "'includ[ed]'" certain terms "'without limitation'" to be "clear and unambiguous"). Moreover, even assuming *arguendo* that Roberts's interpretation of the agreement were correct, the "as is" clause would still apply here because there is no dispute that it covers Weight Watchers' Fee-Based Products. Roberts alleges only that he was unable to use the mobile application to access Online*Plus*, which is expressly defined to be one of the Fee-Based Products. There is no additional allegation that he personally suffered any harm related to problems with the Website.

Next, Roberts argues that the Subscription Agreement should not be read to allow Weight Watchers to provide a product "as is," without an obligation to correct any defects, because that would render the contract "illusory for lack of mutuality of obligation." *Dorman v. Cohen*, 413 N.Y.S.2d 377, 380 (N.Y. App. Div. 1979); *see also Credit Suisse First Bos. v. Utrecht-Am. Fin. Co.*, 915 N.Y.S.2d 531, 535 (N.Y. App. Div. 2011) ("[A]n interpretation that renders a contract illusory and therefore unenforceable is disfavored and enforcement of a bargain is preferred.").

4

That is not so, as Weight Watchers is still obligated to provide Roberts with a "limited right to access, use and display" its Website and the materials provided thereon, including the Fee-Based Products to which he subscribed, on an "as is" basis. App. 26, 43. Even if Roberts has come to believe that such a right is not worth the fees he has paid to Weight Watchers, the agreement is not illusory because it nevertheless has some value. To the extent that Roberts now seeks to take issue with the unambiguous terms of the bargain struck, New York law has long held that courts are "not free to alter the contract to reflect [their] personal notions of fairness and equity." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 171 (N.Y. 2002). Accordingly, we "will not make a new contract for the parties under the guise of interpreting the writing." *Heller v. Pope*, 164 N.E. 881, 882 (N.Y. 1928).

Lastly, Roberts argues that Weight Watchers breached the implied covenant of good faith and fair dealing by failing to provide a functioning product. Yet the authority relied on by Roberts stands only for the limited proposition that "courts will imply a covenant of good faith where the implied terms are consistent with other mutually agreed upon terms." *Caceci v. Di Canio Constr. Corp.*, 526 N.E.2d 771, 775 (N.Y. 1988) (citing *Wood v. Duff-Gordon*, 118 N.E. 214 (N.Y. 1917)). Roberts's argument is unavailing here because the Subscription Agreement expressly provided that Weight Watchers did not warrant that its services would be "uninterrupted or error–free" or "that defects will be corrected." App. 43. Roberts could not have reasonably understood the Subscription Agreement to imply otherwise. *See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 394 (2d Cir. 2002) ("The covenant includes 'any promises which a reasonable person in the position of the promisee would be justified in understanding were included.'" (quoting *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995))).

We have considered all of Roberts's arguments on this appeal and find in them no basis

for vacatur. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK
