Lyons v Sigma Mgt. Holdings, LLC

2026 NY Slip Op 02205

April 14, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

John Lyons, Plaintiff-Appellant,

v

Sigma Management Holdings, LLC, et al., Defendants-Respondents.

Decided and Entered: April 14, 2026

Index No. 654360/23|Appeal No. 6341|Case No. 2024-06436|

Before: Moulton, J.P., Friedman, González, Shulman, Rosado, JJ.

Grygiel Law, LLC, Clinton (Stephen G. Grygiel of counsel), for appellant.

Clarick Gueron Reisbaum LLP, New York (Aaron H. Crowell of counsel), for respondents.

[*1]

Order, Supreme Court, New York County (Andrew Borrok, J.), entered on or about September 24, 2024, which granted defendants' motion to dismiss the first amended complaint pursuant to CPLR 3211(a)(1) and (7), unanimously affirmed, without costs.

We reject plaintiff's argument that the promissory note at issue is illusory. A contract is illusory "[w]here a promisor retains an unlimited right to decide later the nature or extent of his performance" (Chiapparelli v Baker, Kellog & Co., 252 NY 192 [1929]). Such was not the case here. Defendant Sigma Management's ability to decide whether to pay plaintiff was not completely unlimited (see Dorman v Cohen, 66 AD2d 411, 418-419 [1st Dept 1979] [contract was illusory where one party had right to terminate at will and without notice]). Sections 2 and 3 of the note required Sigma Management to make principal and interest payments according to a defined schedule, and section 2 required the full principal amount to be paid in the event of a transfer of the assets of Sigma Management's subsidiary. The scheduled principal and interest payment obligations were subject to suspension by section 5(a) of the note if Sigma Management's subsidiary was prohibited from transferring money to its parent under the provisions of a Senior Credit Agreement (SCA) between the subsidiary and its lenders, but nothing in the agreement completely relieved Sigma Management of its obligation to perform. Indeed, because these provisions were "clear, complete and unambiguous, [they] should be enforced according to [their] terms" (Cole v Macklowe, 99 AD3d 595, 595 [1st Dept 2012]; see Duane Reade, Inc. v Cardtronics, LP, 54 AD3d 137, 140 [1st Dept 2008]).

Enforcement of the note as written does not render certain sections meaningless. Sigma Management was not required to suspend payments under section 5(a); it was simply not "obligated" to do so; indeed, its affiliates still made payments to plaintiff in January 2023 and March 2023. Similarly, the note's use of conditional language such as "if" and "if any" is not problematic, since it was merely to allow for the possibility that at some point the SCA would not be in effect and Sigma Management's obligation to make payments would be restored.

[*2]

That plaintiff received payments under the note in January 2023 and March 2023 has no bearing on the enforceability of the provision that Sigma Management was not obligated to make payments while the SCA was in effect. First, in interpreting contracts, evidence of parties' conduct is generally only relevant when the terms of the contract are ambiguous (see Webster's Red Seal Publs. v Gilberton World-Wide Publs., 67 AD2d 339, 341 [1st Dept 1979], affd 53 NY2d 643 [1981]). Again, the terms of the agreement at issue are not ambiguous. Further, the note contains an unambiguous non-waiver clause (Rosenzweig v Givens, 62 AD3d 1, 7 [1st Dept 2009], affd 13 NY3d 774 [2009]); see also Whitecap [US] Fund I, LP v Siemens First Capital Commercial Fin. LLC, 121 AD3d 584, 592-593 [1st Dept 2014]). The fourth amendment to the SCA, adding an exception that allows plaintiff to be paid under certain circumstances, is immaterial, since it only reinforces the notion that Sigma Management's obligation to pay plaintiff was generally suspended while the SCA was in effect.

The motion court properly dismissed the fraud claim. Plaintiff admits that he asked for a copy of the SCA while the transactions at issue were being negotiated, but that his request was declined. In accepting the promissory note nonetheless, plaintiff relinquished any ability to plead justifiable reliance (see e.g. Rodas v Manitaras, 159 AD2d 341, 342-343 [1st Dept 1990]). Moreover, the special facts doctrine does not save the fraud claim. Under that doctrine, "a duty to disclose arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair" (P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V., 301 AD2d 373, 378 [1st Dept 2003] [internal quotation marks omitted]). However, the special facts doctrine applies to scenarios where one party concealed a material fact; here, the alleged fraud is premised on the misrepresentationof a material fact.

The court correctly dismissed plaintiff's claim for breach of the implied covenant of good faith and fair dealing. The covenant "cannot be construed so broadly as to effectively nullify other express terms of the contract, or to create independent contractual rights" (National Union Fire Ins. Co. of Pittsburgh, Pa. v Xerox Corp., 25 AD3d 309, 310 [1st Dept 2006], lv dismissed 7 NY3d 886 [2006]). Such express terms exist here, where the note stated that Sigma Management's obligations to pay principal and interest were subject to section 5. In addition, "[a] claim for breach of the implied covenant . . . may not be used as a substitute for a nonviable claim of breach of contract" (Smile Train, Inc. v Ferris Consulting Corp., 117 AD3d 629, 630 [1st Dept 2014] [internal quotation marks omitted]).

We have considered plaintiff's other arguments and find them unavailing.

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: April 14, 2026