# JOANN C. SLATT, Respondent, v ABNER P. SLATT, Appellant.

First Department, July 5, 1984

APPEARANCES OF COUNSEL

*Edith Blumberg* for appellant.
*Joann C. Slatt,* respondent *pro se.*

**OPINION OF THE COURT**

KASSAL, J.

The issue on the appeal is the construction of a cost-of-living adjustment clause in a separation agreement and its applicability to annual, as well as monthly maintenance payments. Defendant appeals from a judgment entered on a directed verdict during trial in favor of plaintiff in an action brought to recover support payments due under that agreement.

We disagree with our dissenting colleagues and would affirm the judgment, awarding plaintiff a cost-of-living adjustment on all support and maintenance payments, consisting of both monthly and annual payments under the clear, unambiguous terms of the separation agreement. In concluding otherwise, the dissent has overlooked critical language from subparagraph (g) of paragraph FIFTH, which was the central issue before the trial court. Our colleagues

have also failed to take into account the relative position of the parties, including the fact that plaintiff, a housewife, has appeared *pro se* throughout the course of the litigation while defendant, an attorney, has been represented by counsel who drafted the agreement.

Paragraph FIFTH of the separation agreement, executed July 1, 1969, provides for periodic payments to be paid by the husband to the wife for "support and maintenance" in "the following sums" (1) "equal monthly installments of $225.00 per month" which, after January 1, 1970, "shall be increased to $250.00 per month" and (2) annual payments of $1,000 payable on December 31, 1970 "and on each and every December 31st thereafter, a like sum of $1,000.00." The agreement provided that the "December 31st payments * * * shall be due and payable to the wife only in the event that the husband's gross income in the year of said payment exceeds $28,000.00." The first such annual payment was to be in the sum of $500 and was payable December 31, 1969, in recognition of the fact that the first payment was due six months after execution of the agreement on July 1, 1969. Subparagraph (g) of paragraph FIFTH reads as follows: "In addition to *the foregoing payments,* the wife shall receive an additional sum representing a cost of living increase based upon the U.S. Department of Labor Bureau of Labor Statistics Consumer Price Index for Urban Wage Earners and Clerical Workers, above the base figure, as set forth in said Statistics for the year 1969." (Emphasis added.)

We find that the Trial Justice correctly interpreted the critical language in the cost-of-living increase provision, namely, "the foregoing payments", as referring to all support and maintenance payments to the wife under the agreement, which were to be made in monthly and annual installments. Had the parties intended otherwise, that the cost-of-living adjustment apply only to the monthly payments, they would have included language to that effect. Where the contract itself clearly evidences the intention of the parties, it is inappropriate to go beyond the language used by them (see *Laba v Carey,* 29 NY2d 302, 308; *Hall & Co. of N. Y. v Orient Overseas Assoc.,* 65 AD2d 424, 428, affd 48 NY2d 958). However, to the extent that the agreement may be ambiguous, it must be resolved against

defendant and the language in the contract construed most strongly against him as the party who prepared it (*67 Wall St. Co. v Franklin Nat. Bank,* 37 NY2d 245, 248; *Rentways, Inc. v O'Neill Milk & Cream Co.,* 308 NY 342, 348). In interpreting an agreement, the court's function must be to accord to the language used by the parties its "fair and reasonable meaning" (*Heller v Pope,* 250 NY 132, 135), not to disregard it entirely, as has been done by the dissent. As was observed in *Sutton v East Riv. Sav. Bank* (55 NY2d 550, 555): "Put another way, 'the aim is a practical interpretation of the expressions of the parties to the end that there be a "realization of [their] reasonable expectations"' (see *Brown Bros. Elec. Contrs. v Beam Constr. Co.,* 41 NY2d 397, 400, quoting 1 Corbin, Contracts, § 1; see, also, 4 Williston, Contracts [3d ed], § 600, pp 284-285). Concordantly, as previously indicated, not merely literal language, but whatever may be reasonably implied therefrom must be taken into account (10 NY Jur, Contracts, § 191, p 96; *Matter of People* [*Bond & Mtge. Guar. Co.*], 267 NY 419, 425)."

Essentially, what our dissenting colleagues have done is rewrite the agreement by eliminating from subparagraph (g) the words "the foregoing payments" and by reading into paragraph FIFTH that the only payments for support and maintenance were the monthly installments and that the annual payments constituted a "bonus". To the contrary, the agreement refers to these annual payments as the "December 31st payments" and provides that they are payable to the wife "for support and maintenance." The mere fact that the plaintiff, who the Trial Judge found to be "an unsophisticated housewife" in relation to the defendant, an attorney, did refer in correspondence to the annual payments as a Christmas bonus, does not in any way detract from or alter their inherent nature as support payments. The payments were conceivably and probably timed for the convenience of the defendant, to coincide with end-of-the-year bonus payments.

Contrary to the suggestion by the dissent, we have not overlooked the trial court's observation with respect to plaintiff's educational background. The reference was initially made by the defendant in the robing room, out of the

presence of the jury, and was taken into consideration by the court in finding that, in relation to defendant, plaintiff was "an unsophisticated housewife". Her educational background, however, has no bearing on the legal issue concerning the interpretation of the agreement and is irrelevant in relation to the undisputed facts that the husband is an attorney, was represented by counsel at all times throughout the litigation and it was his attorney who drafted the separation agreement. There is no evidence that the wife ever had her own counsel after the agreement, and, in any event, she is not an attorney.

Nor is it at all dispositive that plaintiff failed to pursue the cost-of-living increase as applied to the annual payments prior to the time she asserted the right, particularly in view of her testimony that she was reluctant to do so because of threats "never to make waves or [she] would be in trouble." As found by the trial court, the record is insufficient to establish a knowing waiver or relinquishment of rights and, during the trial, defendant disclaimed application of a waiver doctrine, stating "I am not saying she was waiving."

Equally inapplicable here is the equitable doctrine of laches since this is an action at law to recover for breach of contract and the relevant criteria is the applicable six-year Statute of Limitations. The Trial Justice correctly applied this rule to bar any claim for a cost-of-living adjustment beyond six years prior to commencement of the action. The record is barren of facts to support the conclusion that the parties either intended or interpreted the agreement so as to make the cost-of-living adjustment only applicable to the monthly payments, a construction which conflicts with the language used in the agreement. While the delay in seeking affirmative relief may operate to bar any remedy beyond the applicable limitations period, it does not form a basis to interpret the agreement contrary to its express terms.

Furthermore, the dissent improperly relies upon "weight of the trial evidence" to support the suggested modification of the judgment on the issue of cost-of-living adjustment applicable to the annual support payments. This was a jury trial, presided over by a competent and experienced Judge.

The only evidence adduced was through the testimony of the defendant, who presented his case first, as the court directed, "since the defendant has the burden of proving that he made proper payments called for under the separation agreement." After the direct examination of this sole witness and before any cross-examination by plaintiff, the Trial Justice conferred with the parties in the robing room and determined that there was no factual issue to be submitted to the jury. Accordingly, *over plaintiff's objection* and without objection by defendant, the court discharged the jury and directed a verdict in favor of plaintiff. Were we to disagree with that determination based upon the "weight of the trial evidence", it might then be appropriate to remand for a new trial. However, there may not be a directed verdict in favor of the defendant without, at the least, affording plaintiff an opportunity to establish her case at trial through cross-examination of the defendant and submission of her proof on the issue. The contrary conclusion adopted by the dissent, to grant judgment to the defendant, would violate due process principles.

Accordingly, the judgment, Supreme Court, New York County (Allen M. Myers, J.), entered May 4, 1983, which directed a verdict in favor of plaintiff and awarded her $9,703.17, should be affirmed, without costs or disbursements.

Ross, J. (dissenting). Plaintiff wife was married to defendant husband in 1954. Thereafter, on July 1, 1969 the plaintiff and defendant entered into a written separation agreement (agreement). The agreement survived the later divorce decree and was not merged into it. The terms of this agreement provided, *inter alia,* (1) for monthly payments to plaintiff for support and maintenance; (2) that on December 31, 1969 plaintiff was to receive $500 and on each and every December 31st thereafter, she was to receive $1,000, as long as the defendant's gross income for the year exceeds $28,000; and (3) "in addition * * * the * * * [plaintiff] shall receive an additional sum representing a cost-of-living increase based upon the U.S. Department of Labor Bureau of Labor Statistics Consumer Price Index for Urban Wage Earners and Clerical Workers, above the base figure, as set forth in said Statistics for the year 1969."

Between 1969 and 1977, defendant made the payments to plaintiff as required. During this period cost-of-living increases, as they occurred, were applied to the monthly payments; while the year-end $1,000 bonus was paid at that fixed amount.

In the summer of 1977, plaintiff asked for an advance on the $1,000 bonus. Defendant agreed. Thus, he gave plaintiff $500 forthwith, plus another $250 on September 30, 1977, and the final $250 on December 1, 1977. The parties agreed in writing that thereafter the bonus was to be paid in quarterly installments of $250. Nowhere in this exchange of correspondence concerning the $1,000 bonus did the parties ever refer to the application of cost-of-living increases to the bonus.

Over the next four years, plaintiff received additional increases in the monthly payments, based upon cost-of-living increases; but, the amount of the quarterly installments of the bonus remained the same.

Plaintiff, in 1981, commenced the instant action to recover cost-of-living increases, *inter alia,* on the yearly bonus. In his answer, defendant, *inter alia,* alleged the six-year Statute of Limitations on contract actions (CPLR 213) and denied that the intent of the parties was that the bonus was subject to the cost-of-living provision.

At the trial, the defendant conceded that there has been a miscalculation of the monthly payments for six years; and as a result he owed plaintiff $2,582.36. Further, as a matter of law, the trial court held that cost-of-living increases applied to the bonus. We disagree.

Our examination of this record indicates that the parties from the inception of the agreement, and for more than a decade, interpreted this agreement to mean that the cost-of-living index did not pertain to the bonus. It is hornbook law that: "[w]hen the parties to a contract * * * enforce it for a long time by a consistent and uniform course of conduct, so as to give it a practical meaning, the courts will treat it as having that meaning" (*City of New York v New York City Ry. Co.,* 193 NY 543, 548).

We find that the weight of the trial evidence does not support the majority's contention that the plaintiff was

unable to bargain equally with the defendant since she was a housewife, who was afraid " 'to make waves or [she] would be in trouble.' " For example, the majority must have overlooked the following observation of the trial court: "she [the plaintiff] is a well educated person. A graduate of Cornell; Phi Beta Kappa; Major in English; Masters degree in English."

Accordingly, we would modify the judgment, Supreme Court, New York County (Allen M. Myers, J.), entered May 4, 1983, to the extent of reducing the award to plaintiff to $2,582.36, and otherwise affirm.

MURPHY, P. J., and FEIN, J., concur with KASSAL, J.; KUPFERMAN and ROSS, JJ., dissent in a separate opinion by Ross, J.

Judgment, Supreme Court, New York County, entered on May 4, 1983, affirmed, without costs and without disbursements.