Frederick **ZISSU**, Plaintiff,

v.

**BEAR, STEARNS & CO.**, a New York Limited Partnership, Barry West, Carleton A. Holstrom, Encore Exploration, Inc., a Delaware corporation, Hearts Energy, Inc., a New York corporation, Gerald B. Cramer, Richard D. Segal, Edward J. Rosenthal, John Doe and Richard Roe, Inc., Defendants.

No. 84 Civ. 7383.

United States District Court,
S.D. New York.

Feb. 4, 1986.

Jaffe & Schlesinger, P.A., Springfield, N.J., for plaintiff; Robert H. Jaffe, Arthur Swidler, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Bear, Stearns, defendants; Max Gitter, Robert P. Haney, of counsel.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for Encore, defendants; Gerald Walpin, Steven S. Miller, Brian G. Lustbader, Richard L. Claman, of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff commenced this action upon allegations, among others, that defendants Bear, Stearns & Co. ("Bear Stearns"), Encore Exploration, Inc. ("Encore") and other defendants acting in concert had violated sections 12(2) and 15 of the Securities Act of 1933,[1] section 10(b) of the 1934 Act,[2] and Rule 10b–5 promulgated thereunder.[3] In substance, plaintiff charged that he was induced to execute a subscription agreement to purchase ten (10) units of a limited partnership known as Encore Exploration 1981–LC, L.P. ("Encore 1981") at a total cost of $1,500,000 by untrue statements of material fact and by omissions of material facts in original and supplemental selling documents prepared by representatives of Encore and Bear Stearns. Encore 1981 was to engage in a drilling operation for oil and gas. The defendants categorically denied the plaintiff's charges and in resisting his claims, relied upon the very documents upon which plaintiff predicated his claims. After a twelve-day trial, the jury reported a verdict in favor of the defendants.

## PLAINTIFF'S MOTION FOR A NEW TRIAL

The plaintiff now moves for a new trial with respect to his claims pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. The application is so clearly without substance that it borders on the

---

1. 15 U.S.C. §§ 77l(2) and 77o.

2. 15 U.S.C. § 78j(b).

3. 17 C.F.R. 240.10b–5 (1985).

frivolous and does not warrant detailed discussion. Sharp issues of fact were presented which the jury decided adversely to plaintiff's contentions. Indeed, the testimony of Zissu, the plaintiff, and defense witnesses was in such conflict on material matters that the Court in its instructions to the jury suggested that the "irreconcilable difference in testimony is not inadvertence or lack of recollection."

Especially frivolous is that branch of his motion for a new trial on the ground that it was highly prejudicial in the prosecution of his claim to allow the defendants to assert before the jury their counterclaims, referred to hereafter, and that prejudicial statements were made by counsel for the Encore defendants in summation. As to the first branch of this claim, no more need be said than that at no time during the course of the litigation did plaintiff make any such contention as to the assertion of the counterclaims in this action. Moreover, the evidence plaintiff now argues prejudiced the presentation of his claims would have been admissible to rebut those claims absent the counterclaims.

■ Plaintiff's final contention—that a portion of Encore's counsel's summation prejudiced his right to a fair trial—considered against the totality of the evidence, the plaintiff's contradictory deposition and trial testimony, the Court's specific instruction as to these particular litigants' right to a fair determination based solely on the evidence and the law, is, to understate it, bordering on the absurd. Again, it is significant that counsel for plaintiff, who now urges this claim, offered no objection when the argument was advanced or even thereafter.[4] Accordingly, plaintiff's motion for a new trial is denied.

### PLAINTIFF'S MOTION FOR JUDGMENT N.O.V. PURSUANT TO FED.R.CIV.P. 50(b)

Plaintiff, a senior partner in a New York City law firm, has engaged extensively in securities transactions. In addition to his legal partnership, he is the chief executive of a company whose shares are traded on the New York Stock Exchange, and also is the chief executive of another company whose shares are traded on the American Stock Exchange. In late 1981, aware that his taxable income was in excess of $600,000, he sought to obtain the benefit of a tax shelter and with that objective purchased the ten shares of the Encore limited partnership pursuant to a Private Offering Memorandum ("POM"). Plaintiff executed a series of documents in which, among other matters, he set forth his experience in making such purchases; represented that he has "such knowledge and experience in financial and business matters" that he is "capable of evaluating the merits and risks of an investment [in Encore 1981]" and that he was "able to bear the substantial economic risks of my investment." Plaintiff further warranted that he was informed that his investment was a "speculative one and involves a high degree of risk," and that he understood that Encore 1981 was "newly organized, has no financial or operating history and is a speculative venture."

Based on the foregoing representations and an indemnity provision referred to hereafter, the defendants Encore and Bear Stearns each asserted a counterclaim that it had sustained damages for legal fees and other costs in defending against the claims asserted by plaintiff. The jury reported a verdict in favor of each defendant upon its counterclaim for breach of warranty, but found in favor of plaintiff on Encore's additional counterclaim, charging him with fraud in inducing the sale of the Encore shares. Upon consent of the parties, the issue of damages was tried to the Court, but before the conclusion of this branch of the trial they stipulated the amount of

---

4. *See Berner v. British Commonwealth Pacific Airlines, Ltd.,* 346 F.2d 532, 542 (2d Cir.1965), *cert. denied,* 382 U.S. 982, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966); *see also Emery-Waterhouse Co. v. Rhode Island Hospital Trust Nat'l Bank,* 757 F.2d 399, 410 (1st Cir.1985); *Kokesh v. American S.S. Co.,* 747 F.2d 1092, 1095 (6th Cir.1984); *Kehr v. Smith Barney, Harris Upham & Co.,* 736 F.2d 1283, 1286 (9th Cir.1984).

damages incurred in defending against plaintiff's suit, to wit, the sum of $235,000 by Bear Stearns and the sum of $320,000 by Encore, without prejudice to the right of plaintiff to challenge the award.

The plaintiff's motion for an n.o.v. order is based upon contentions that as a matter of contract law the defendants are barred from recovering damages for attorneys' fees and costs incurred in defending against plaintiff's securities fraud claims; that the counterclaims are prohibited by section 14 of the 1933 Act and section 29 of the 1934 Act; and that the indemnity agreement is against public policy.

We consider each of these contentions separately.

## A. Contract Principles

Paragraph 8 of the Subscription Agreement provides:

> I understand the meaning and legal consequences of the representations and warranties contained in paragraph 2 hereof, and I agree to indemnify and hold harmless the Partnership and each general and limited partner thereof from and against any and all loss, damage or liability due to or arising out of a breach of any representation or warranty of mine, whether contained in the Partnership Agreement or this Subscription Agreement. Notwithstanding any of the representations, warranties, acknowledgments or agreements made herein by me, I do not thereby or in any other manner waive any rights granted to me under federal or state securities laws.

Plaintiff, in the assertion and prosecution of his claims leading to the trial and in his deposition and trial testimony, made state-

ments at variance with the warranties contained in the Subscription Agreement. Zissu first argues, even assuming the validity of the foregoing indemnification provision, it does not expressly mention attorneys' fees and costs in defending a suit brought by an investor and since a contract must be strongly construed against the party who prepared it (the defendants), they are not entitled to indemnity for attorneys' fees and costs as a matter of contract law.

■ It is correct that under New York law, contracts are strictly construed against the drafter *if* there is doubt or ambiguity as to the meaning of the contract's terms.[5] This particular rule of construction is to be used only as a last resort, when all other rules of construction fail.[6] While the above quoted indemnity provision does not expressly specify attorneys' fees, New York courts have held that broad indemnification provisions should be interpreted to extend to such fees.[7] The all inclusive language of the clause "to indemnify and hold harmless the Partnership and each general partner ... from and against any and all loss, damage or liability ..." is not ambiguous and is sufficiently comprehensive to include loss or damage for payment of attorneys' fees and costs incurred by plaintiff's breach of the warranties.

■ Plaintiff's additional contention that the indemnity provision in effect overcomes the American rule that each litigant pays his own legal fees referred to in *Alyeska Pipeline Service Co. v. Wilderness Society*,[8] is equally without merit. *Alyeska* specifically noted that imposition of legal fees and costs in a litigation upon a losing litigant is not foreclosed when there is an

**5.** See *67 Wall Street Co. v. Franklin Nat'l Bank,* 37 N.Y.S.2d 245, 371 N.Y.S.2d 915, 918, 33 N.E.2d 184, 187 (1975); *Slatt v. Slatt,* 477 N.Y.S.2d 178, 180 (1st Dept.1984), *aff'd,* 102 A.D.2d 475, 64 N.Y.S.2d 966, 488 N.Y.S.2d 645, 477 N.E.2d 1099 (1985); *Dublirer v. Lascher,* 96 A.D.2d 474, 464 N.Y.S.2d 790, 791 (1st Dept.1983); *see also Prescott, Ball & Turben v. LTV Corp.,* 531 F.Supp. 213, 217 (S.D.N.Y.1981).

**6.** See *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 10 n. 2 (2d Cir.1983); *Dorman v. Cohen,* 66

A.D.2d 411, 413 N.Y.S.2d 377, 380 (1st Dept. 1979).

**7.** See, e.g., *Lavorato v. Bethlehem Steel Corp.,* 91 A.D.2d 1184, 459 N.Y.S.2d 170, 171 (4th Dept. 1983); *Colon v. Automatic Retailers Ass'n Service, Inc.,* 74 Misc.2d 478, 343 N.Y.S.2d 874, 877-78 (Cir.Ct.N.Y.C.1972).

**8.** 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

"enforceable contract." [9] Here there was such an express undertaking by plaintiff in the event of a breach of his warranty and representations.

■ Zissu further argues that the provision in paragraph 8 which states that the representations, warranties and agreements referred to therein do not constitute a waiver of any rights under the securities laws conflicts with the first sentence—the indemnification provision. The argument proceeds that since the second is more specific than the first, it should be read as an exception to the indemnification clause precluding holding Zissu liable for defendants' attorneys' fees. However, the two sentences are not in conflict; they do not modify or limit each other. Defendants did not seek to hold Zissu liable for the exercise of his rights under the securities laws, but rather for his breaches of the representations he made in the Agreement. Zissu retained his right to sue under the securities laws, which he did; however, he did not have a right to breach the warranties he made. Plaintiff, in large measure, based his lawsuit upon statements contrary to his warranties, testified upon both his deposition and upon the trial contradictory of his warranties, which breaches required defendants to incur legal fees and other expenses in resisting his claims and defending this lawsuit.

■ Zissu's final argument based on contract law is that the indemnification provision does not give Bear Stearns as broker-dealer a right to indemnity; that it only applies to the general and limited partners. However, it is beyond dispute that Bear Stearns was not only the broker-dealer, but also a special limited partner in Encore 1981. It was in that capacity that Bear Stearns was entitled to recover on its counterclaim for breach of Zissu's warranties.

### B. The Claim that the Warranties Provision Violated § 14 of the 1933 Act and § 29(a) of the 1934 Act

■ Section 14 of the 1933 act [10] and a similar nonwaiver provision of section 29(a) of the 1934 Act [11] provides:

Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

Plaintiff contends that the counterclaims are barred by the foregoing provisions and that he cannot be held liable for exercising his right to commence this action for alleged violations of the 1933 and 1934 Acts. But he was not barred from asserting and prosecuting his claim of alleged violations of those Acts; indeed, this very action flies in the face of that claim and of the express recognition that the indemnity provision was not a waiver of plaintiff's rights under federal or state securities laws. The counterclaim is based upon matters wholly independent of any alleged violations of the securities acts; it is based upon his representations and warranties and his breach thereof. Had he not breached his warranties, as the jury found, his action would have been a straightforward suit based upon the asserted violations by the defendants of the securities acts and whether he sustained or failed to carry his burden of proof, would not have brought into play the defendants' counterclaims.[12]

### C. Indemnity Agreement vs. Public Policy

■ Zissu's final thrust is that permitting the defendants to recover attorneys' fees based on the indemnification clause violates public policy; that it would have an *in terrorem* effect on other investors by discouraging them from bringing suit to enforce the securities laws out of fear of having to pay attorneys' fees to defend-

---

**9.** *Id.* at 257, 95 S.Ct. at 1621.

**10.** 15 U.S.C. § 77n.

**11.** 15 U.S.C. § 78cc(a).

**12.** The defendants asserted their counterclaim upon an amendment only after it appeared that in his deposition plaintiff repudiated his warranties.

ants, even if there were merit to the claim but the investor failed to carry his burden of proof.

The issue before this Court is whether enforcing this indemnity agreement on these facts is contrary to the policies underlying the securities laws. The Court need not address whether enforcement of all indemnity provisions between an investor and any issuer of securities is contrary to policy. Enforcing the indemnification provision in this Subscription Agreement did not deter Zissu and need not deter other investors from bringing suits to enforce their rights under the securities laws. The only potential chilling effect is on those investors who make representations in a subscription agreement which they later repudiate. It would discourage such investors from using their own fraudulent conduct in order to bring unjustified lawsuits.

The indemnification provision does not permit the defendants to recover attorneys' fees because Zissu sued them for alleged violations of the securities laws. It was triggered, as already noted, by plaintiff's own conduct when he breached the representations which caused loss and damage to the defendants. It was his representations upon which defendants relied in selling the limited partnership shares to plaintiff. Zissu was the one who made the counterclaims possible. If Zissu had not made written representations and then repudiated them to allege securities laws violations by the defendants, the indemnification clause would not have come into play. Moreover, not only is enforcement of this indemnification clause not contrary to securities law policies, but the securities laws authorize courts to award attorneys' fees on these facts. Section 11(e) of the 1933 Act [13] provides that courts may award costs and reasonable attorneys' fees if the plaintiff's suit is without merit. The issue of whether Zissu breached warranties that he understood Encore 1981 was a speculative

investment with a high degree of risk, that he was not relying on any representations other than those in the POM, that he had carefully reviewed the POM and Subscription Agreement, and that he was capable of calculating the risks of investing in Encore 1981, were submitted to the jury. The jury returned a verdict in favor of Encore and Bear Stearns, finding that Zissu had breached warranties made to those defendants. It was those warranties which defendants relied upon in deciding to sell units of the oil and gas partnership to Zissu and it was these warranties that Zissu repudiated in his allegations in the commencement of this action, in sworn statements made in pretrial depositions and in his trial testimony. Where an investor repudiates warranties previously made for the purpose of bringing a suit, enforcement of the indemnification clause comports with existing policies of the securities laws.

Finally, as defendants note, SEC Rule 146 [14] required them to ascertain whether plaintiff was capable of evaluating the risks of the investment or financially able to bear the risk.[15] This was one of the reasons they required plaintiff to complete the subscription agreement and confidential offeree questionnaire. If this indemnification agreement is not enforceable, it would undermine the securities laws to the extent that investors would be free to make misrepresentations with impunity and issuers would be wholly unable to accurately assess the qualifications of potential investors in risky ventures such as this one.

It is ironic that the plaintiff should urge public policy considerations to relieve him of his indemnity agreement. Enforcement of his agreement is not only not contrary to public policy considerations, but indeed is required in the public interest. Here a lawyer, a sophisticated and experienced trader in securities, who in two months purchased and sold $50,000,000 in United States Treasury bills, sat before a jury and

---

**13.** 15 U.S.C. § 77k(e).

**14.** 17 C.F.R. § 230.146.

**15.** *See McDaniel v. Companies Minera Mar de Cortes,* 528 F.Supp. 152, 162–64 (D.Ariz.1981).

when questioned about the documents here at issue repeatedly sought to belittle their sanctity by sneeringly referring to them as "boiler plate," seeking to convey to the jury they were mere scraps of paper without any legal significance. Indeed, public policy considerations require that Zissu be held to his express obligation in order to encourage respect for the law and to impress upon him and others that specifically defined commitments and representations are not scraps of paper to be disregarded at will. If enforcement of this indemnification clause on these facts deters future Frederick Zissus from repudiating expressly stated representations and testifying at depositions and upon trials contrary to the facts warranted, it is fatuous to argue that it is contrary to public policy.

### DEFENDANTS' MOTION FOR ATTORNEYS' FEES UNDER § 11(e)

■ Encore and Bear Stearns move for costs and reasonable attorneys' fees pursuant to section 11(e) of the Securities Act of 1933.[16] Section 11(e) provides:

In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard.

For the Court to award attorneys' fees, it must find that plaintiff's suit was "without merit." The Second Circuit has held that this means the Court must find that the suit "borders on the frivolous or has been brought in bad faith."[17] Mere failure of the plaintiff to present sufficient evidence to support his claims does not in itself support a finding of frivolity.[18]

■ While the Court recognizes that costs and attorneys' fees should not be awarded simply because the defendants prevailed, Zissu's claims were utterly without merit. Indeed, any verdict by the jury other than that reported on plaintiff's claims would have been so clearly against and contrary to the weight of the evidence that the Court would have been required to set it aside.[19] If there ever has been a case involving frivolous or bad faith claims, it is this one. Plaintiff, a sophisticated investor, purchased units of a highly risky oil and gas venture, Encore 1981, in the hopes of obtaining tax advantages. When the venture was less successful in locating oil and gas than had been hoped, plaintiff brought suit alleging that defendants had made material misstatements and material omissions in violation of section 12(2) of the 1933 Act and section 10(b) of the 1934 Act. Upon the entire record, it is an understatement merely to say that this was a strike suit instituted for its nuisance and settlement value.[20] It was a brazen attempt by plaintiff to disregard his contractual obligation.

The Court is of the view that the totality of the trial record reveals the frivolous nature of this lawsuit and that it was brought in bad faith. Because plaintiff's claims boil down to mere disappointment with the amount of tax write-offs he ob-

---

16. 15 U.S.C. § 77k(e).

17. See Aid Auto Stores, Inc. v. Cannon, 525 F.2d 468, 471 (2d Cir.1975); Klein v. Shields & Co., 470 F.2d 1344, 1347 (2d Cir.1972); Rubin v. Long Island Lighting Co., 576 F.Supp. 608, 615 (E.D.N.Y.1984); Straus v. Holiday Inns, Inc., 460 F.Supp. 729 (S.D.N.Y.1978).

18. Aid Auto Stores, 525 F.2d at 471.

19. See, e.g., Unijax, Inc. v. Champion Int'l, Inc., 683 F.2d 678 (2d Cir.1983); Gehrhardt v. General Motors Corp., 581 F.2d 7 (2d Cir.1978).

20. Cf. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 210 n. 30, 96 S.Ct. 1375, 1389 n. 30, 47 L.Ed.2d 668 (1976); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 740–41, 95 S.Ct. 1917, 1927–28, 44 L.Ed.2d 539 (1975).

tained and the proof he introduced at trial was so replete with blatant contradictions and unsubstantiated allegations, the Court awards attorneys' fees and costs to Bear Stearns and Encore under section 11(e).[21]

So ordered.

---

**21.** The parties have stipulated that if the Court awards attorneys' fees and costs under § 11(e), the amount will be the same as that stipulated to with respect to the breach of warranty counterclaim on which the defendants have prevailed.