■ TARBERT REALTY, INC., Appellant, v THREE KAY HOLDING CORP., INC., Respondent.—Judgment of the Supreme Court, New York County (Myriam J. Altman, J.), entered September 16, 1988, which dismissed the complaint, rescinded the contract of December 6, 1988, and directed defendant to return to plaintiff the sum of $7,500, is affirmed, without costs.

The facts are as stated in the dissent, except that the parties agree, and the trial court found, that the clause in dispute, paragraph 7 of the parties' contract of December 6, 1983, reads as follows: "All notes or notices of violations of law or municipal ordinances, orders or requirements noted in or issued by the Department of Housing and Buildings, Fire,

Labor, Health, or other State or Municipal Department having jurisdiction, against or affecting the premises at the date hereof. Purchaser is acquiring subject to housekeeping violations provided cost thereof does not exceed $1,000.00. The seller shall furnish the purchaser with an authorization to make the necessary searches therefor."

The dissent (at 290), relying heavily on the doctrine that " '[i]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language' ", construes the clause against defendant seller, even though the changes in the standard form were made here at a formal contract signing attended by plaintiff buyer's attorney, and it is thus far from clear that the buyer had no voice in the selection of the new language. Applying this cannon of construction, the dissent finds that the clause "mandated the seller to cure all major violations" (at 291), i.e., that the parties intended "to permit the seller to avoid the necessity of curing minor violations" (at 290) defined as costing no more than $1,000 to repair. Such a construction eliminates any distinction between "housekeeping violations", on the one hand, and "violations of law or municipal ordinances", on the other, subsuming the former within the latter, thereby leaving the former without any meaning or effect.

Nevertheless, we assume, arguendo, that the parties intended to make the sale "subject to" violations not to exceed $1,000, without regard to the nature of the violations be they of the housekeeping variety or any other. Even so, to say that the buyer was purchasing the property subject to minor violations is not necessarily to say that the seller was obligated to cure major violations—it is, rather, simply to say that if, at the time of closing, the property should be burdened with major violations, the buyer would be under no obligation to close and could walk away from the deal. This is, in effect, the meaning given the clause by the trial court when it said that the buyer had the "option of closing or not closing", an eminently reasonable construction consonant with the most noteworthy fact in the record, to wit, the parties' deliberate deletion of that part of the standard clause plainly obligating the seller to convey the premises free of violations. As the trial court put it: "Plaintiff seeks to rewrite the contract to restore the language which was deleted from paragraph 7 to place the obligation to cure violations upon defendant. But it was the clear intention of the parties to delete the paragraph, which is what they did."

The construction given the clause by the trial court is consistent with its finding, amply supported by the parol evidence placed in the record, that the buyer was not "particularly concerned about the violations" since its main purpose was not in taking possession of the premises but "in a quick flipping of the contract". Among other material in the record supporting this finding is the fact, acknowledged by the buyer, that it did not have an opportunity to closely inspect the premises prior to signing the contract. It was therefore in the buyer's interest to have a clause inserted in the contract that would allow it to walk away from the deal if it could not flip the contract and if, after having had an opportunity to more closely inspect the premises, the violations proved to be, as the trial court put it, "too onerous" to repair.

Given these circumstances, the trial court was correct in refusing specific performance, and, moreover, did justice by ordering the seller to return the buyer's down payment, a ruling from which the seller does not appeal. Concur—Sullivan, J. P., Asch and Wallach, JJ.

Milonas and Kassal, JJ., dissent in a memorandum by Milonas, J., as follows: On December 6, 1983, plaintiff-appellant Tarbert Realty, Inc., whose principals are Ronald Rettner and Barry Levites, both experienced in the area of real estate, entered into an agreement to purchase certain real property located at 79-89 St. Nicholas Place in Manhattan from defendant-respondent Three Kay Holding Corporation, whose principal is Joshua Krup. The purchase price for the premises, three six-story residential apartment dwellings, was established at $525,000. The instant action for specific performance and breach of contract involves the interpretation of paragraph 7 of the agreement. In its original form, this clause provided that: "All notes or notices of violations of law or municipal ordinances, orders or requirements noted in or issued by the Departments of Housing and Buildings, Fire, Labor, Health or other State or Municipal Department having jurisdiction, against or affecting the premises at the date hereof, shall be complied with by the seller and the premises shall be conveyed free of the same, and this provision of this contract shall survive delivery of the deed hereunder. The seller shall furnish the purchaser with an authorization to make the necessary searches therefor."

Subsequently, the words "shall be complied with by the seller and the premises shall be conveyed free of the same, and this provision of this contract shall survive delivery of the deed hereunder" were eliminated and replaced by a sentence

stating that "Purchaser is acquiring subject to housekeeping violations provided cost thereof does not exceed $1,000.00." In its present version, paragraph 7 provides that: "The premises are sold subject also to all notes or notices of violations of law or municipal ordinances, orders or requirements noted in or issued by the Departments of Housing and Buildings, Fire, Labor, Health or other State or Municipal Departments having jurisdiction, against or affecting the premises at the date hereof, including possible lack of certificate of operation for the burner. Purchaser is acquiring subject to housekeeping violations provided cost thereof does not exceed $1,000.00."

Although, plaintiff's principals conducted only a cursory inspection of the buildings prior to the contract date, it is evident that they at least possessed knowledge of the existence of numerous violations on the building which, according to plaintiff, defendant represented would be cured. The contract in question was prepared by defendant's attorney, Irving Roth, Esq., now deceased. Following the execution thereof, the down payment was tendered, but the violations were not eliminated. At the conclusion of the trial held in connection with this matter, the court determined that "[e]ach side offered testimony regarding the discussions including representations concerning the violations. Neither side offered sufficiently credible evidence regarding those discussions for me to make a fact finding regarding either the representations or understanding of either side." The court, moreover, proceeded to "find that on the contract date, plaintiff's principals were not particularly concerned about the violations because they were interested in a quick flipping of the contract and negotiated its assignability for that purpose. Thereafter, plaintiff listed the property as 'subject to minor violations' and also as 'subject to violations'. By the proposed closing date, when the hoped for sale did not materialize, plaintiff's principals began to focus on the violations and demanded that Krup clear all the violations before closing or reduce the purchase price by $100,000." In concluding that plaintiff should be accorded rescission and a return of its deposit, rather than the specific performance demanded in the complaint, the trial court declared that: "Inasmuch as the parties deleted the phrase obligating Seller to cure the violations, it was their clear intention that the contract remain silent on that issue and there is no authority for rewriting that provision into the contract. At best, there was a mistake as to the nature of the violations, or, plaintiff, aware of the violations, sought to protect itself if the cost of repairs became too onerous by obligating itself under the

contract only if housekeeping violations did not exceed $1,000. The silence regarding the obligations of the parties with respect to violations constitutes mutuality of mistake because the contract failed to account for a serious potential problem. Under these circumstances, no contract was formed * * * and either side is, therefore, entitled to rescission".

I disagree. In my opinion, the court improperly declined to direct specific performance in favor of plaintiff and, instead, *sua sponte,* created its own remedy. In that respect, there is no contention that plaintiff, as purchaser, did not substantially perform its preclosing obligations under the agreement. Defendant, however, committed itself to curing the outstanding violations on the property. In the original paragraph 7, seller was to convey the premises free of all notices of violation, whereas, in the substituted form, the purchaser was acquiring the property subject only to those "housekeeping" violations whose cost of curing does not exceed $1,000. Thus, the sole difference between the two versions of this clause is that, in the first, the seller was required to eliminate all violations, while, in the second, the seller had to cure all violations costing more than $1,000 to repair.

As the Court of Appeals declared in *Matter of Cromwell Towers Redevelopment Co. v City of Yonkers* (41 NY2d 1, 6), in construing a contract, "[a] fair and reasonable interpretation, consistent with that purpose, must guide the courts in enforcing the agreement" *(see also, Sutton v East Riv. Sav. Bank,* 55 NY2d 550). To the extent that "the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used" *(Slatt v Slatt,* 64 NY2d 966, 967, *rearg denied* 65 NY2d 785). However, "[i]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language" *(Jacobson v Sassower,* 66 NY2d 991, 993; *see also, Slatt v Slatt,* 102 AD2d 475, *affd* 64 NY2d 966, *rearg denied* 65 NY2d 785, *supra).* Notwithstanding that the language of paragraph 7 can only be reasonably interpreted to mean that the amendment thereof was adopted to permit the seller to avoid the necessity of curing minor violations and that the purchaser was agreeing to accept the premises subject only to such "housekeeping" violations, whatever ambiguity exists must be resolved in favor of plaintiff and against defendant, whose attorney wrote the clause.

Moreover, if a party's rights are to be restricted to abandoning the agreement when the other party fails to perform its

obligations thereunder, then the contract must specifically limit the remedies available in the event of a breach. In the absence of such a clause limiting the parties' legal remedies, the nondefaulting party has the option of seeking either specific performance or damages and, in certain circumstances, both equitable and monetary relief. In fact, even defendant does not dispute plaintiff's right to insist upon specific performance; it merely contends that equity is inappropriate here since the agreement was incomplete on its face. Yet, the majority appear to take the position that when one party breaches a contract for the sale of real property, then the other party's redress will lie only in walking away from the deal. It should also be noted that contrary to the view expressed by the majority, the purchaser was under no constraint to inspect the premises more closely. Indeed, a provision compelling the seller to cure violations would relieve the buyer from having to examine carefully the property for any possible violations since the vendor had committed itself to correcting any major problems.

Accordingly, whether plaintiff had the option of closing or not closing, the fact remains that paragraph 7 mandated the seller to cure all major violations, and it is undisputed that defendant failed to do so. Since the plaintiff has expressed an interest in proceeding with the contract, which is otherwise in full force and effect, and it is evident that money damages will not adequately compensate for loss of the property, the trial court should have granted the equitable relief of specific performance. The judgment of the Supreme Court should, consequently, be reversed.